

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0038-14

**CHRISTOPHER ADRIAN MILLER, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, ALCALA, RICHARDSON, YEARY, JJ., joined. MEYERS, J., filed a dissenting opinion. JOHNSON and NEWELL, JJ., concurred.

## O P I N I O N

We granted the State's petition for review to decide whether the corpus delicti rule was satisfied in this case, and whether the rule continues to serve its intended purpose in this state's jurisprudence. We decide that a strict application of the corpus delicti rule is unnecessary when a defendant confesses to multiple criminal offenses within a single criminal episode or course of conduct if the crimes confessed to are sufficiently

proximate that the underlying policy reasons for the rule are not violated. As a result, we will reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

## FACTS

In late November of 2011, Detective Callahan of the White Settlement Police Department was assigned to investigate a report from Child Protective Services that Appellant had engaged in illicit sexual conduct with his then three-month-old daughter, Madison.[1] Callahan's first step in her investigation was to call Appellant and ask whether he would voluntarily discuss the allegations against him. Appellant agreed. On November 29, 2011, Appellant met Callahan and gave two confessions, the first verbal and the second written. In those confessions, he admitted to molesting his daughter on at least three different occasions, including once in her nursery and twice in his bedroom. A few days later, Appellant called Callahan and left a message stating that he remembered a fourth incident of molestation that he would like to discuss with the detective. Appellant returned to the police station in early December, and he confessed to Callahan verbally, and in writing, that he had also placed his penis on his daughter's sexual organ and took a picture with his mobile phone, but he deleted the picture from his phone.

After Appellant confessed, he gave his computer to police and had his wife give

---

[1]For purposes of conformity, we continue to use the pseudonyms used by the court of appeals. *See Miller v. State*, No. 02–12–00487–CR, 2013 WL 6564725, at *1 n.2 (Tex. App.—Fort Worth Dec. 12, 2013) (mem. op.) (not designated for publication).

them the memory card that was in his phone at the time he allegedly took the photograph (which would have stored the picture taken with the phone). But police confirmed Appellant's statement that everything on the memory card had been deleted. She also gave consent to the police to remove a section of carpet next to the changing table in Madison's nursery, which investigators believed contained seminal fluid.

Appellant was charged with four counts of aggravated sexual assault of a child under six years of age for molesting his daughter four times in a period of 27 days.[2] At trial, the State was able to corroborate Count Three—the nursery incident—by analyzing the fluid found next to Madison's changing table, confirming it was seminal fluid, and comparing it with a known DNA sample from Appellant. However, the State's computer-forensics expert from the Forth Worth Police Department was unable to recover any evidence from Appellant's computer or the memory card that was in his phone, including the picture Appellant said he took of himself molesting his daughter. According to the expert, Appellant used a computer program to irretrievably delete files and folders on his computer and to erase the contents of his memory card. As a result, no probative evidence

---

[2]The indictment alleged the following four counts: Count One accused Appellant of intentionally or knowingly causing the mouth of his daughter to contact Appellant's penis on or about September 6, 2011. Count Two accused Appellant of intentionally or knowingly causing his daughter's mouth to touch his penis on or about September 19, 2011. Count Three alleged that Appellant, on or about September 24, 2011, intentionally or knowingly caused the anus of his daughter to contact the penis of the defendant. Count Four alleged that Appellant intentionally or knowingly caused his daughter's sexual organ to contact his penis on or about October 3, 2011. In each count, it was also alleged that Appellant's daughter was a child younger than six years of age at the time of each offense.

could be retrieved from the computer or memory card. The jury convicted Appellant of all four counts and sentenced Appellant to life confinement on each count.

## COURT OF APPEALS

On appeal, Appellant argued, in part, that the State failed to establish the corpus delicti of three counts of the four counts with which he was charged by failing to corroborate his confessions as to those counts with independent evidence. *See Miller v. State*, No. 02–12–00487–CR, 2013 WL 6564725, at *2 (Tex. App.—Fort Worth Dec. 12, 2013) (mem. op.) (not designated for publication). The court of appeals agreed and set aside Appellant's convictions in Counts One, Two, and Four and rendered acquittals on those counts. The appellate court reasoned that the only affirmative evidence that corroborated Appellant's confession was the seminal fluid on the carpet (Count Three), and that testimony from the computer-forensics expert was insufficient to establish the corpus delicti of the other counts. *See id.* at *3.

The State filed a Petition for Discretionary Review, which we granted.[3]

---

[3]We granted review on three grounds, which state:

(1)    Should the corpus delicti rule, which is not constitutionally required or statutorily mandated, be abolished because it fails to account for developments in the law, it inadequately serves its original limited function, it interferes with the jury's exclusive province to determine the weight to assign evidence, and it may work to positively obstruct justice? (RR 6 at State's Exhs. 2, 3, 7, 8). *See Miller*, No. 02-12-00487-CR, slip op. at 5-7.

(2)    If the corpus delicti rule is retained, should it be reformulated to focus on the defendant's confession and consider whether there is substantial

**ARGUMENTS OF THE PARTIES**

*A. The State*

The State makes three arguments. First, it argues that the corpus delicti rule in Texas should be abolished. Second, it contends that, if this Court decides a corroboration requirement is still necessary when there is an extrajudicial confession, we should abandon the corpus delicti rule in favor of the trustworthiness standard adopted by the United States Supreme Court and various other state jurisdictions. Finally, the State asserts that, if this Court retains the corpus delicti rule, then we should recognize that it should be applied less rigorously in cases in which a defendant confesses to multiple crimes that comprise a single criminal episode or course of conduct.

To support its first argument for abolishing the corpus delicti rule, the State makes six separate arguments: (1) the corpus delicti rule was implicitly abandoned when this Court held that factual-sufficiency review as it pertains to criminal convictions is inappropriate; (2) the rule inadequately serves its original function; (3) the corpus delicti rule works to positively obstruct justice; (4) increasingly complex criminal laws make it

---

independent evidence which would tend to establish its trustworthiness? (RR 6 at State's Exhs. 2, 3, 7, 8). *See Miller*, No. 02-12-00487-CR, slip op. at 5-7.

(3)     If a defendant confesses in two recorded oral statements and in two handwritten statements to sexually abusing his infant daughter four times in less than a month, and one of those acts is sufficiently corroborated, does that corroborated act of sexual abuse serve as corroboration for the remaining acts of sexual abuse? (RR 4 at 40, 95-99, 143-46; RR 6 at State's Exhs. 2, 3, 7, 8). *See Miller*, No. 02-12-00487-CR, slip op. at 5-7.

difficult to determine the corpus delicti in many cases; (5) the rule interferes with a factfinder's right to determine the weight and credibility of evidence; and (6) developments in the law render the corpus delicti rule obsolete. We summarize each of the State's arguments in turn.

The State first asserts that the corpus delicti rule "seems to contradict" this Court's decision in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) (plurality op.). The State argues the rule contradicts *Brooks* because it adds an additional requirement to the legal-sufficiency standard delineated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), by requiring the State to prove the elements of each offense beyond a reasonable doubt *and* establish the corpus delicti of each offense. The State also alleges that the corpus delicti rule fails to serve its limited function because it is both underinclusive and overinclusive in that it "does little to prevent wrongful convictions," and it offers no protection (i.e., acts to obstruct justice) under certain circumstances, such as when the person victimized is nonverbal and there is no other corroborating evidence. The State highlights the facts of this case as an example of the windfall it argues the corpus delicti rule gives to defendants. Specifically, the State argues that, if Appellant had also ejaculated during the other assaults that took place in his bedroom, and although the discovery of that semen may strictly comply with the dictates of the corpus delicti rule, the discovery would add little to the "truth-seeking the rule purports to effect" because it would not be abnormal to find Appellant's semen in his own

bedroom.

Next, the State argues that, since the adoption of the corpus delicti rule, the number and complexity of criminal statutes has increased dramatically, making the corpus delicti of certain crimes "difficult to define." To support its argument, the State cites a number of cases.[4] The State also contends that application of the corpus delicti rule invades the decision-making province of the factfinder to assign weight and credibility determinations regarding an extrajudicial confession, a fact the State avers this Court has recognized.[5]

Finally, the State cites a number of changes in the law, both federal and state, that it argues warrant abolishing the corroboration requirement in extrajudicial-confession cases. Specifically, the State cites decisions from the United States Supreme Court holding that due-process principles are violated when a confession is coerced by psychological or physical means; holding that a suspect in custody, and before interrogation, must be apprised of his rights; and holding that since the corpus delicti rule was first applied in Texas, the legal sufficiency of the evidence in a case may now be

---

[4]*Compare Salazar v. State*, 86 S.W.3d 640, 64–65 (Tex. Crim. App. 2002), *and Brown v. State*, 576 S.W.2d 36, 43 (Tex. Crim. App. [Panel Op.] 1978) (op. on reh'g), *with Cardenas v. State*, 30 S.W.3d 384, 390 (Tex. Crim. App. 2000), *and Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993).

[5]*See* TEX. CODE CRIM. PROC. art 38.04; *see also Gribble v. State*, 808 S.W.2d 65, 71 (Tex. Crim. App. 1990) (plurality op.) (stating that the corpus delicti rule "peremptorily reduces the weight of admissible evidence for policy reasons originated by this Court without express legislative sanction . . .").

reviewed.[6] The State also cites developments in the law unique to Texas that offer more protection to defendants and, thus, warrant abolishing the extrajudicial-confession-corroboration requirement: confessions must be in writing or electronically recorded, they must reflect that the accused was apprised of his rights, and Texas law defines "voluntary" with respect to confessions more broadly than the United States Supreme Court.[7]

Turning to the State's second ground for review, the State argues that the corpus delicti rule in Texas should be replaced with a trustworthiness standard because the focus of the inquiry should be placed on the trustworthiness of an extrajudicial confession and not on corroborating the confession. The State fails to expound on its broad argument for

---

[6]*See, e.g.*, *Jackson*, 443 U.S. at 319 (holding that the conviction of an accused is not constitutionally sound unless "the record evidence could reasonably support a finding of guilt beyond a reasonable doubt" by any rational trier of fact); *Miranda v. Arizona*, 384 U.S. 436, 471–72 (1966) (holding that, before the prosecution can argue that an accused waived any of his rights, he must be apprised of his rights and knowingly, intelligently, voluntarily waive those rights or the confession is involuntary); *Escobedo v. Illinois*, 378 U.S. 478, 490–91 (1964) (holding that failing to apprise an accused of his right to remain silent and denying him the right to consult with an attorney while he is in custody and is the focus of a police investigation violates the Sixth Amendment right to the assistance of counsel); *Blackburn v. Alabama*, 361 U.S. 199, 205–06 (1960) (examining the voluntariness of a confession and concluding that, when a statement is involuntary and is introduced as evidence, "the Fourteenth Amendment [was] grievously breached . . ."); *Watts v. Indiana*, 338 U.S. 49, 53–55 (1949) (discussing the requirements of due process as it relates to confession, including that a confession must be voluntary).

[7]*See* TEX. CODE CRIM. PROC. arts. 38.21 (statement of the accused may be used against him only if it appears the statement was freely and voluntarily given without compulsion or persuasion), 38.22 (delineating when a statement of an accused may be used against him); *Osbourn v. State*, 259 S.W.3d 159, 171–73 (Tex. Crim. App. 2008) (comparing voluntariness as defined by the United States Supreme Court with the statutory perquisites in Texas that govern whether a statement was voluntary).

the adoption of a trustworthiness standard, except to argue that, if this Court followed the trustworthiness standard, Appellant's confessions would be found to be trustworthy.

Finally, in its third ground for review, the State asserts that Appellant's extrajudicial confessions to similar crimes perpetrated against the same victim over a period of 27 days combined with the discovery of his seminal fluid in the carpet next to his daughter's changing table sufficiently corroborated the other three offenses such that the corpus delicti rule was satisfied as to all counts. To support its argument, the State cites decisions from this Court, and it contends that the "corroborated offense showed that [A]ppellant views his infant daughter with 'lust' . . . and that he acted on that lust[;] it was probable, therefore, that he committed the other counts of aggravated sexual assault." *See Casey v. State*, 215 S.W.3d 870, 881 (Tex. Crim. App. 2007); *Robbins v. State*, 88 S.W.3d 256, 264, 267–78 (Tex. Crim. App. 2002) (Keller, P.J., concurring and Cochran, J., concurring, joined by Womack and Johnson, JJ.).

## B. Appellant[8]

Appellant responds that the State's argument to abolish the corpus delicti rule in Texas is unjustified, that the replacement of the corpus delicti rule with a trustworthiness standard is inappropriate, and that a limitation on the corpus delicti rule such as the State suggests for closely related offenses would be based on "circular logic" and cause serious public-policy concerns.

---

[8]Appellant filed only a reply to the State's petition for discretionary review. We summarize those arguments now.

With respect to his first argument, Appellant asserts that, because of its long history in Texas, the corpus delicti rule should not be abolished, and that the State seeks to overrule a "long-settled" rule of law only to "save" the three convictions set aside in this case and so the State can obtain convictions when the only evidence is an uncorroborated extrajudicial confession.

Next, Appellant contends that adoption of a trustworthiness standard would be inappropriate because the judicially fashioned rule should not be replaced with another standard when the existing rule "has worked well in the State of Texas for fifteen decades." He goes on to argue that undertaking such a course of action would be an "overreaction," and despite the fact some jurisdictions have reconsidered their application of the corpus delicti rule or adopted a trustworthiness standard, that does not inexorably lead to the conclusion that modification of the rule or adoption of another corroboration standard is mandated. Appellant also opposes the adoption of a trustworthiness standard because the facts of Appellant's case are unique and present a "no-evidence no-corroboration" problem.

Finally, Appellant rejects the State's argument that the corpus delicti rule can be satisfied in Texas when a defendant confesses to multiple criminal offenses comprising a single criminal episode or course of conduct by establishing the corpus delicti of only one of the confessed offenses. He argues that such a limitation on the corpus delicti rule would anchor all criminal offenses to which a defendant confesses to only a single

offense, which he asserts is circular logic. He also contends that the limitation to the corpus delicti rule proposed by the State would have disturbing implications because "an innovative police officer can []interview the accused multiple times, creating the 'corroboration' of one confession with earlier confessions, thus creating a loop of self-proving confessions and statements."

## CORPUS DELICTI

The corpus delicti rule is one of evidentiary sufficiency affecting cases in which there is an extrajudicial confession. *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). The rule states that, "[w]hen the burden of proof is 'beyond a reasonable doubt,' a defendant's extrajudicial confession does not constitute legally sufficient evidence of guilt absent independent evidence of the corpus delicti." *Id.* To satisfy the corpus delicti rule, there must be "evidence independent of a defendant's extrajudicial confession show[ing] that the 'essential nature' of the charged crime was committed by someone." *Id.* at 866; *see Salazar v. State*, 86 S.W.3d 644 (Tex. Crim. App. 2002).

The purpose of this judicially fashioned rule is to ensure "that a person would not be convicted based solely on his own false confession to a crime that never occurred." *See Carrizales v. State*, 414 S.W.3d 737, 740 (Tex. Crim. App. 2013). We have suggested that this rule protects mentally infirm individuals who confess to an imaginary crime and people who give an extrajudicial confession because of official coercion. *See Bible v. State*, 162 S.W.3d 234, 247 (Tex. Crim. App. 2005). However, the rule has also been

criticized because it does not protect mentally infirm individuals who confess to a real crime when there is other corroborating evidence, it can result in the exclusion of reliable confessions, the perpetrator of a crime against a non-verbal person that suffers an intangible injury could not be convicted unless there is other corroborating evidence, and the rule is obsolete because of other developments in the law.[9]

When the United States Supreme Court addressed this issue, it adopted a trustworthiness standard in lieu of the corpus delicti rule, and that standard requires "substantial independent evidence which would tend to establish the trustworthiness of the statement." *See Opper v. United States*, 348 U.S. 84, 93 (1954); *see also Smith v. United States*, 348 U.S. 147, 156–57 (1954); *United States v. Calderon*, 348 U.S. 160, 167 (1954). A number of state courts have also adopted the trustworthiness standard explicated by the United States Supreme Court. *See, e.g.*, *Colorado v. LaRosa*, 293 P.3d

---

[9]*Cf. Colorado v. LaRosa*, 293 P.3d 567, 574 (Colo. 2013) (listing criticisms leveled against the corpus delicti rule, including that the court was "troubled that the rule works to bar convictions in cases involving the most vulnerable victims, such as infants, young children, and the mentally infirm" and that "the rule operates disproportionately in cases where no tangible injury results, such as in cases involving inappropriate sexual contact, or where criminal agency is difficult or impossible to prove, such as in cases involving infanticide or child abuse"); *Gribble v. State*, 808 S.W.2d 65, 71 (Tex. Crim. App. 1990) (plurality op.) (stating that the corpus delicti rule "peremptorily reduces the weight of admissible evidence for policy reasons originated by this Court without express legislative sanction"); *Self v. State*, 513 S.W.2d 832, 836–87 (Tex. Crim. App. 1974) (suggesting that the distrust of extrajudicial confessions may be dissipating due to developments in the law); 7 WIGMORE, EVIDENCE § 2070 (Chadbourn rev. 1979) (stating that the underlying policy reason for the corpus delicti rule is questionable, that "the danger which it is supposed to guard against is greatly exaggerated in common thought," and that, though not really needed, the rule has been abused by "unscrupulous counsel" who turn it into "a positive obstruction to the course of justice"); 1 MCCORMICK ON EVIDENCE § 145, at 563–64 (4th ed. 1992) (criticizing the rule as ineffective and duplicative of other confession doctrines).

567, 575 (Colo. 2013); *Fontenot v. State*, 881 P.2d 69, 77–78 (Okla. Crim. App. 1994);

*State v. Osborne*, 516 S.E.2d 201, 204–05 (S.C. 1999).

Other jurisdictions, however, have continued to apply the traditional corpus delicti

rule or variations of the traditional rule. One such variation relates to a defendant's

extrajudicial confession to multiple closely related criminal offenses. In Indiana for

example, when a suspect confesses to multiple criminal offenses from a single criminal

episode or course of conduct, the corpus delicti rule is satisfied if the prosecution can

sufficiently corroborate the most serious offense. In Pennsylvania, the rule is satisfied if

one of the related offenses to which the suspect confessed is corroborated.

In *Willoughby v. State*, 552 N.E.2d 462, 467 (Ind. 1990), the defendant was

convicted of murder, felony murder, robbery, and confinement stemming from the murder

of a police officer. *Id.* at 464. One of the appellant's claims on appeal was that the

prosecution had failed to prove the corpus delicti of each charged offense at trial. After

discussing the policies underlying the corpus delicti rule, different formulations of the

rule applied by different jurisdictions, and arguments in favor and against the rule, the

court held that the rule had been satisfied. In reaching its conclusion, the court reasoned

that, if the policy reason underlying the corpus delicti rule is to prevent wrongful

convictions based on extrajudicial confessions to imaginary crimes, requiring the State to

establish the corpus delicti of each criminal offense when they are closely related "adds

little to the ultimate reliability of the confession once independent evidence of the

principal crimes is introduced." *Id.* at 467. The court went on to state that "[t]he confession at that point has been substantially corroborated. In such a case the confession stands as direct evidence of each crime, even those not separately corroborated, if the independent evidence establishes the corpus delicti of the principal crime or crimes." *Id.*

In *Pennsylvania v. Verticelli*, 706 A.2d 820 (Pa. 1998), the appellant was convicted of accident involving damage to a vehicle or property, driving with a suspended license, and misdemeanor driving under the influence (DUI). One of the claims the appellant raised on appeal was that his statement to the investigating officer that he had been operating the motorcycle in question was not admissible because the corpus delicti of DUI had not been established. *Id.* at 440–41. His convictions were affirmed on direct appeal and by the Pennsylvania Supreme Court.

The court described the closely related crime exception in the following terms,

> An exception to the corpus delicti rule known as the closely related crime exception . . . . comes into play where an accused is charged with more than one crime, and the accused makes a statement related to all the crimes charged, but the prosecution is only able to establish the corpus delicti of one of the crimes charged. Under those circumstances where the relationship between the crimes is sufficiently close so that the introduction of the statement will not violate the purpose underlying the corpus delicti rule, the statement of the accused will be admissible as to all the crimes charged.

*Id.* at 441–42 (internal citation omitted). Expounding on the "sufficiently close" language, the court stated that the closely related crime exception applies when the crimes confessed to "share a common element and are temporally related, as having arisen from the same

transaction[,]" but it also emphasized that application of the closely related crime exception turns on a case-by-case analysis. *Id.* at 444. In a later case, the Pennsylvania Supreme Court overruled its previous holding that the offenses had to share a common element and noted that "[w]here the relationship between the crimes to which the defendant has confessed is close and the policy underlying the corpus delicti rule—to avoid convictions for crimes that did not occur—is not violated, the exception renders the confession admissible for all closely related crimes." *See Pennsylvania v. Taylor*, 831 A.2d 587, 596 (Pa. 2003).

With this background we turn to the State's three grounds for review.

**DISCUSSION**

Based on our research into the history of the corpus delicti rule in the United States and in Texas, and our review of the briefing in this matter, we are not persuaded that the corpus delicti rule should be abolished or replaced with the trustworthiness standard. While we agree with the critics that argue the policy reason for the rule is narrow—to prevent convictions based on extrajudicial confessions to imaginary crimes—we still believe the rule provides essential protection for those defendants who would confess to an imaginary crime because of mental infirmity or for other reasons. And although a number of jurisdictions have adopted the trustworthiness standard, it does not necessarily follow that we should do the same. *See, e.g.*, *Massachusetts v. Forde*, 466 N.E.2d 510, 458–59 (Mass. 1984) (adopting the corpus delicti rule after the United States Supreme

Court adopted a trustworthiness standard and stating that, although the "rule has been criticized, and diluted . . . [,] it precludes the possibility of conviction of [a] crime based solely on statements made by a person suffering a mental or emotional disturbance or some other aberration"). We believe that the rule continues to serve an important function, and we note that it has been applied in Texas for at least one-hundred-sixty-one years.[10] Therefore, we overrule the State's first and second grounds for review.

We do, however, agree with the State and the jurisdictions that have adopted a closely related crime exception that such a rule strikes a worthy balance between satisfying the public policy concerns underlying application of the corpus delicti rule without diluting the rule to the point of futility. *See Taylor*, 831 A.2d at 400–01; *Willoughby*, 552 N.E.2d at 467; *Arizona v. Morgan*, 61 P.3d 460, 172–73 (Az. Ct. App. 2002) (holding that the corpus delicti rule was satisfied when the corpus delicti of only one of three offenses could be established because the corroboration of the one offense sufficiently corroborated the appellant's confession as "to eliminate any concern that it could be untrue"); *Drumbarger v. State*, 716 P.2d 6, 12 (Ala. Ct. App. 1986) (requiring independent evidence for only one offense when the appellant confessed to multiple sex crimes over a three-month period). And we see no merit in Appellant's argument that such an exception employs circular reasoning, or that it would allow police officers to

---

[10]*Jones v. State*, 13 Tex. 168, 177 (1854).

interview an accused multiple times and corroborate one confession with another.[11]

We also share the concerns of the Colorado Supreme Court that, when the case involves "the most vulnerable victims, such as infants, young children, and the mentally infirm," the corpus delicti rule can be used to block convictions for real crimes that resulted in no verifiable injury. *See LaRosa*, 293 P.3d at 574 (citing *Meredith v. Colorado*, 380 P.2d 227, 71–72 (Colo. 1963); *Colorado v. Robson*, 80 P.3d 912, 913–14 (Colo. Ct. App. 2003)) (citing two cases in which defendants that had confessed to molesting a five-year-old boy and an infant were reversed because the corpus delicti of the offenses could not be established). We hold that Texas law does recognize a closely related crimes exception to strict application of the corpus delicti rule, but the exception applies only when the temporal relationship between the offenses is sufficiently proximate that introduction of the extrajudicial confession does not violate the policies underlying the corpus delicti rule.

The next question we must answer is whether application of the exception to Appellant would violate his right to due process of law.[12] We believe that retroactive

---

[11]For example, if this exception were applied to Appellant's case—a question we decide later—the corroboration would not be one confession supporting another. Rather, the corroboration would be the seminal fluid from Appellant found in the carpet next to his daughter's changing table, just as Appellant confessed it would be. And that corroboration would satisfy the corpus delicti rule as to the other three offenses because the offenses were sufficiently close in temporal proximity that the policy underlying the corpus delicti rule would not be infringed upon, but the administration of justice could be.

[12]Appellant raised a similar argument in his brief that, if this Court adopted the trustworthiness standard, the new standard could not be constitutionally retroactively applied to

application of this judicial decision recognizing a closely related crimes exception to the corpus delicti rule would not violate Appellant's due-process rights. In *Rogers v. Tennessee*, 532 U.S. 451 (2001), the United States Supreme Court reviewed a decision from the Tennessee Supreme Court in which it abolished the common law "year and a day rule." That rule states that a person who injures another cannot be prosecuted for homicide if the injured person does not die within a year and a day of the person's act. The Tennessee Supreme Court retroactively applied the rule to uphold the appellant's conviction. *Id.* at 453. On appeal to the United States Supreme Court, the appellant argued that his due-process rights were violated by that retroactive application of the decision of the Tennessee Supreme Court. *Id.* The court held that the appellant's due-process rights were not violated. *Id.* at 462. In reaching its conclusion, the court reasoned that strict application of ex post facto principles in a common-law setting would "impair the incremental and reasoned development of precedent that is the foundation of the common law system." *Id.* at 461. The court went on to note that a common-law system by its very nature presupposes evolution, and it held that, the only time the judicial alteration of a common-law doctrine would violate a defendant's due-process rights is when the alteration "is unexpected and indefensible by reference to the law which has been expressed prior to the conduct in issue." *Id.* at 455.

     In applying the law to the facts of the case, the Supreme Court determined that

---

Appellant's case. While not exactly the same issue that Appellant presented, in the interests of justice we address the due-process implications, if any, of retroactively applying this decision.

retroactive application of Tennessee's judicial opinion abolishing the common law "year and a day rule" did not violate the appellant's right to due process because its decision was not unexpected or indefensible. *Id.* at 462–63. Specifically, the court found it significant that a number of other jurisdictions had already abolished the rule because it had been significantly undermined, and unlike using canons of statutory construction to determine the precise meaning of written words, a court examining the continuing vitality of a common-law rule often involves reviewing the practices of other jurisdictions to "determin[e] whether to alter or modify a common law rule in light of changed circumstances, increased knowledge, and general logic and experience." *Id.* at 464. Finally, the court examined the use of the rule in Tennessee law and agreed with the Tennessee Supreme Court that the "year and a day rule" was not firmly entrenched in the criminal jurisprudence of the state, and that, although the rule was characterized as substantive, that was of no moment because the rule had not served as the basis of a judicial opinion in Tennessee. *Id.* at 466.

We conclude that our decision today is not so unexpected and indefensible, based on the applicable law at the time of Appellant's conduct, that retroactive application of our decision would violate his right to due process of law. Instead, we believe that our decision is "a routine exercise of common law decision making in which [we] brought the law into conformity with reason and common sense." When examining the practices of jurisdictions throughout the nation, it is clear that the continuing usefulness of the

traditional corpus delicti rule has been questioned for some time. As we have explained, a number of courts have abolished the rule in favor of a trustworthiness standard, including the United States Supreme Court in the 1960s. Other jurisdictions have recognized that increased flexibility was necessary because of concerns regarding unintended consequences of the rule and due to erosion over time of some of the policy reasons for the rule. In addition, while the Tennessee Supreme Court in *Rogers* abolished the "year and a day rule," our decision today limits only strict application of the corpus delicti rule when a specific fact pattern is presented. We also note that our research reveals no Texas case in which relief was granted because, although a defendant confessed to multiple crimes, the State could establish the corpus delicti of only one offense. Therefore, with respect to the application of the corpus delicti rule to cases with this fact pattern—cases in which a defendant gives an extrajudicial confession to multiple criminal offenses—the State can establish the corpus delicti of only one offense.

## CONCLUSION

Texas criminal law does recognize a closely related crimes exception to the corpus delicti rule in cases with an extrajudicial confession, and it is implicated when the temporal connection between the offenses confessed to is sufficiently close that introduction of the confession does not violate the purposes of the corpus delicti rule. We reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Hervey, J.

Delivered: April 15, 2015

Publish