**Affirmed and Opinion Filed May 28, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01066-CR

## KRISTIE LYN HERMES, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court
Collin County, Texas
Trial Court Cause No. 416-81667-2013

## MEMORANDUM OPINION
Before Justices Francis, Brown, and Stoddart
Opinion by Justice Stoddart

A jury convicted Kristie Lyn Hermes of intoxication assault causing serious bodily injury. The jury assessed punishment at four years in prison and a $1,000 fine. The jury recommended community supervision. The trial court suspended sentence and placed her on community supervision for five years. In three issues, Hermes contends the State failed to corroborate her out-of-court statement that she was driving the vehicle at the time of the accident, the evidence was insufficient to prove she was intoxicated at the time of the accident, and the evidence was insufficient to show the complainant suffered serious bodily injury. We affirm the trial court's judgment.

### BACKGROUND

Hermes drove her boyfriend, Cesar Franco, to a party at her friend's apartment around 10:30 or 11:00 p.m. Franco drank heavily and blacked out. He did not remember smoking

marijuana that night, but he smoked marijuana about once a week. Franco did not remember the drive home or who was driving, although Hermes usually drove while they were dating. Franco did not have a driver's license at the time of the accident.

Holly Love was driving south on Custer Road in Frisco between 4:00 and 4:30 a.m. when she saw Hermes in the road waving her arms. Hermes was crying and said she had been in a bad accident. Hermes's face was covered in blood and she was bleeding from the top of her head. As they walked to the accident scene, Hermes told Love that she went to a party, had a few beers and smoked marijuana. When Love saw the vehicle, it was obvious it had rolled over and was in a one-car accident. There were no other cars around. Love saw Franco was lying in the roadway injured. Hermes said she had been driving and Franco was ejected from the car. Love testified it was dark and very cold that morning, but it was not raining, snowing, or windy.

Officer Kevin Kryczkowski testified Hermes and Franco were lying in the roadway when he arrived. Hermes was unconscious at first, but became frantic as Kryczkowski spoke to her. Blood was running down her face from the top of her head. Hermes told Kryczkowski that she consumed three or four beers and smoked marijuana that evening. She also said she was driving at the time of the accident. Hermes told Kryczkowski the last thing she remembered was passing through the intersection about a quarter or half mile north of the accident and she did not know how she got to where they were. Franco suffered so much trauma that he did not understand what was going on. Franco was flown to the hospital because his injuries required immediate attention. Hermes was transported to the hospital by ambulance.

Officer Jason Hinkel testified there were visible skid marks on the road, deep gouges in the grass median, and debris from the vehicle along its path. These indicated the vehicle was traveling south in the left lane when it began to drift gradually toward the right lane. It hit the curb, ran up on the right-lane curb, headed back toward the left lane, and flipped multiple times. The vehicle came to a stop upright on the center median. It was not entirely clear whether the

brakes had been applied. Detailed photographs of the accident scene and the damaged vehicle were admitted in evidence.

Hermes's blood was drawn at the hospital at 6:30 a.m. Based on the hospital lab report, a forensic scientist determined Hermes had a blood-alcohol level of .091 approximately two hours after she was found at the accident. A toxicologist testified that Hermes's blood contained a small amount of a muscle relaxant, which has intoxicating effects. The toxicologist also testified that if alcohol, the muscle relaxant, and marijuana are taken together, they can produce an additive effect, meaning the overall intoxicating effect is greater than one substance alone. Hinkel testified he also received a lab report stating there were traces of marijuana in Hermes's system.

Hinkel interviewed Hermes at the hospital around 9:00 a.m. Hermes said the car flipped three or four times and she knew she had to get out of the vehicle. She did not know where Franco was at first, but found him injured in the roadway. She estimated the first cars came by three or four minutes later. Hermes admitted drinking two shots of liquor and smoking a small bowl of marijuana. She said she did not drink any beer. When asked if she had been driving, she said, "Yeah, it was me, definitely." At the end of the interview, she said "I know I was in the wrong."

As a result of the accident, Franco suffered several spine fractures and a brain contusion. He was in the hospital for four days and unconscious for three days. When he was released, he could walk, but it was very difficult. He wore a back brace for two months and could not work during that time. At trial, two years and eight months after the accident, Franco testified his back hurts very badly on cold days and he cannot do some things. He testified he was going to get himself "checked out."

Dr. Al West testified that Franco suffered several spine fractures and a brain contusion. The back injuries were painful, but there was no risk for paralysis. However, West testified the

residual back pain due to fractured vertebrae constituted protracted impairment of the function of a bodily member. West explained that a brain contusion is a bruise to the tissue of the brain, usually bleeding into the brain tissue itself. Most of the time, a portion of the brain tissue will die as a result of the brain contusion. West always puts a patient with a brain contusion in intensive care for the first 24 hours "because there is a substantial chance that that gets worse and causes death." West testified that a portion of Franco's brain died because of the brain contusion and the death of a portion of the brain is a protracted loss of a bodily member.

## STANDARD OF REVIEW

We review a challenge to the sufficiency of the evidence on a criminal offense for which the State has the burden of proof under the single sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014). Under this standard, the relevant question is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2011) (footnotes omitted).

This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Therefore, in analyzing legal sufficiency, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and therefore defer to that determination. *Id.* Direct and circumstantial evidence are treated equally: Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See*

–4–

*Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

We do not engage in a divide-and-conquer analysis to explain away individual facts. *See Murray v. State*, No. PD-1230-14, 2015 WL 1743419, at *4 (Tex. Crim. App. April 15, 2015). Nor do we focus on "evidence that was *not* admitted at trial" or distinguish "missing" evidence in the case on appeal from evidence present in other cases. *Id.* (court of appeals misapplied standard of review for insufficient-evidence claims by engaging in divide-and-conquer analysis and focusing on evidence that was not admitted at trial).

As applicable here, a person commits intoxication assault if the person by accident or mistake while operating motor vehicle in a public place while intoxicated, by reason of that intoxication causes serious bodily injury to another. TEX. PENAL CODE ANN. § 49.07(a) (West 2011). Intoxicated means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. *Id.* § 49.01(2)(A). It also means having an alcohol concentration of 0.08 or more. *Id.* § 49.01(2)(B). Serious bodily injury for purposes of intoxication assault means injury that causes a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. *Id.* § 49.07(b).

**ANALYSIS**

**A. Corpus Delicti**

In her first issue, Hermes argues her extrajudicial statements that she drove that night were uncorroborated and therefore insufficient evidence under the corpus delicti rule.

The corpus delicti rule is a rule of evidentiary sufficiency applicable to an extrajudicial confession by the defendant. *Miller v. State*, No. PD-0038-14, 2015 WL 1743581, at *5 (Tex. Crim. App. Apr. 15, 2015). Under the rule, "[w]hen the burden of proof is 'beyond a reasonable

–5–

doubt,' a defendant's extrajudicial confession does not constitute legally sufficient evidence of guilt absent independent evidence of the corpus delicti." *Id.* (quoting *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013)). The purpose of the rule is to ensure "that a person would not be convicted based solely on his own false confession to a crime that never occurred." *Carrizales v. State*, 414 S.W.3d 737, 740–41 (Tex. Crim. App. 2013) (discussing 17th century case where supposed murder victim returned whole and healthy a few years after his servant and the servant's brother and mother had confessed to the "murder" and been executed). The rule protects mentally infirm persons who confess to imaginary crimes and people who confess because of official coercion. *See Bible v. State*, 162 S.W.3d 234, 246–47 (Tex. Crim. App. 2005).

The rule has been criticized in modern times for failing to protect mentally infirm persons who falsely confess to real crimes and for protecting actual perpetrators of crimes against non-verbal persons that suffer no tangible injury. *See Miller*, 2015 WL 1743581, at *5–7. The rule has also been criticized as obsolete due to other developments in the law. *Id.* While "the policy reason for the rule is narrow—to prevent convictions based on extrajudicial confessions to imaginary crimes—we still believe the rule provides essential protection for those defendants who would confess to an imaginary crime because of mental infirmity or for other reasons." *Id.* 2015 WL 1743581, at *7–8.

To satisfy the corpus delicti rule, there must be "evidence independent of a defendant's extrajudicial confession show[ing] that the 'essential nature' of the charged crime was committed by someone." *Hacker*, 389 S.W.3d at 866; *see Salazar v. State*, 86 S.W.3d 640, 644–45 (Tex. Crim. App. 2002). This other evidence need not be sufficient by itself to prove the offense: "all that is required is that there be some evidence which renders the commission of the offense more probable than it would be without the evidence." *Williams v. State*, 958 S.W.2d 186, 190 (Tex. Crim. App. 1997) (quoting *Chambers v. State*, 866 S.W.2d 9, 15–16 (Tex. Crim. App. 1993));

*see Rocha v. State*, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000).

Franco testified that Hermes drove them to the party in her car. He also testified she normally drove when the two were out together and he did not have a driver's license. Franco drank so much that night that he blacked out and could not remember getting into the car. Only Hermes and Franco were found at the scene. No other cars were on the scene. This evidence makes it more probable that Hermes was driving and corroborates her extrajudicial statements to Love, Kryczkowski, and Hinkel that she was driving when the accident occurred. This evidence fulfills the purpose of the corpus delicti rule. It "assures that the very crime to which appellant confessed, and for which [s]he was prosecuted, actually happened." *Salazar*, 86 S.W.3d at 645; *see Williams*, 958 S.W.2d at 190.

Viewing all the evidence, including the corroborating evidence and Hermes's extrajudicial statements, in the light most favorable to the verdict, we conclude a rational jury could find beyond a reasonable doubt that Hermes operated a motor vehicle. *Miller*, No. PD-0038-14, 2015 WL 1743581, at *5. We overrule Hermes's first issue.

## B. Intoxication and Serious Bodily Injury

Hermes's second and third issues challenge the sufficiency of the evidence to prove that she was intoxicated at the time of the accident and that Franco suffered serious bodily injury. Specifically, she contends there is no evidence of a temporal link between her intoxication and the operation of a motor vehicle and that the evidence did not show Franco's injuries were long-term or serious. We discuss both issues together.

Circumstantial evidence can provide the necessary temporal link between the defendant's intoxication and operating a motor vehicle. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *McCann v. State*, 433 S.W.3d 642, 648–49 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (circumstantial evidence was sufficient even without knowing the exact time span between accident and arrival of officers to support finding that appellant was intoxicated while

driving). The record reflects Hermes drank alcohol and smoked marijuana at the party that night, a muscle relaxant was in her system, the accident occurred shortly before Love arrived on the scene, Hermes's blood alcohol level was over the legal limit two hours later, Hermes did not remember how the accident occurred, and the accident was a one-car accident on a straight section of road in dry weather. From this evidence, viewed in the light most favorable to the verdict, a jury could reasonably infer that Hermes was intoxicated at the time of the accident.

Hermes argues the evidence is insufficient because Franco's injuries were not protracted and did not create a substantial risk of death.

Whether an injury constitutes serious bodily injury is determined on a case by cases basis. *See Moore v. State*, 739 S.W.2d 347, 352 (Tex. Crim. App. 1987) (plurality op.) (en banc). A substantial risk of death "is a risk that gives rise to apprehension of danger to life." *Id.* at 353. A "protracted loss or impairment" is one that is "either continuing, dragged out, drawn out, elongated, extended, lengthened, lengthy, lingering, long, long-continued, long-drawn, never-ending, ongoing, prolix, prolonged, or unending." *Id.* at 352. The loss of function need only be protracted, not permanent. *See Andrus v. State*, No. 05-08-00703-CR, 2010 WL 797196, at *2 (Tex. App.—Dallas Mar. 10, 2010, no pet.) (mem. op., not designated for publication) (listing cases where serious bodily injury was found from loss of function for three months, four weeks, six weeks, and three and a half months).

The record shows Franco was unconscious at the scene. He was hospitalized for four days and remained unconscious for three of those days. His suffered several fractures to his spine and could only walk with difficulty when released from the hospital. He wore a back brace for two months and was unable to work during that time. At trial, he still could not do some things and his back hurt badly in cold weather. Franco also suffered a brain contusion which caused a portion of his brain tissue to die. West testified Franco's brain contusion initially created a substantial risk of death and West puts patients with brain contusions in intensive care

for 24 hours "because there is a substantial chance that that gets worse and causes death."

Considering all the evidence in the light most favorable to the verdict, a rational jury could find beyond a reasonable doubt that Franco suffered serious bodily injury as a result of the accident.

Viewing all the evidence in the light most favorable to the verdict, a rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Murray*, No. PD-1230-14, 2015 WL 1743419, at \*4. We overrule Hermes's second and third issues.

### CONCLUSION

We conclude the evidence is sufficient to corroborate appellant's out-of-court statements, to show she was intoxicated at the time of the accident, and to show the complainant suffered serious bodily injury.

We affirm the trial court's judgment.

/ Craig Stoddart/
CRAIG STODDART
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
141066F.U05

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KRISTIE LYN HERMES, Appellant

No. 05-14-01066-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-81667-2013.
Opinion delivered by Justice Stoddart, Justices Francis and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of May, 2015.