

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0108-20 & PD-0109-20

### BRADLEY JACOBS SHUMWAY, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### MONTGOMERY COUNTY

**SLAUGHTER, J., filed a concurring opinion.**

### <u>CONCURRING OPINION</u>

The Court concludes that the *corpus delicti* rule poses no impediment to upholding

Appellant's convictions for indecency with a child, and in doing so it creates yet another

exception to the rule for certain types of sexual offenses committed against pre-verbal

children. I agree with this outcome, but write separately to express my view that, in an

appropriate case, this Court should abolish the judicially-created *corpus delicti* rule entirely because that rule no longer serves any legitimate purpose and has never been legislatively adopted. But, because no party in the present case has requested that we abolish the rule, I agree with the Court's reasoning for purposes of resolving this case and join the opinion.

As the Court's opinion notes, the *corpus delicti* rule dates back hundreds of years and originated in England. The basic requirement of the rule is that the prosecution must present evidence other than a defendant's confession that proves the crime actually occurred. *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015) (stating that the *corpus delicti* rule requires that "there must be 'evidence independent of a defendant's extrajudicial confession show[ing] that the 'essential nature' of the charged crime was committed by someone'") (quoting *Hacker v. State*, 389 S.W.3d 860, 866 (Tex. Crim. App. 2013)). At the time of the rule's creation, English courts were primarily concerned about false confessions to non-existent crimes resulting from coercion or mental illness. Courts thus adopted the *corpus delicti* rule with the goal of protecting against unreliable criminal convictions based "solely on [a] false confession to a crime that never occurred." *Carrizales v. State*, 414 S.W.3d 737, 740 (Tex. Crim. App. 2013); *accord Miller*, 457 S.W.3d at 924 (noting that the rule is designed to "protect[] mentally infirm individuals who confess to an imaginary crime and people who give an extrajudicial confession because of official coercion"). Although the rule may have had an important place in the common law, numerous developments in constitutional and statutory law over the past several hundred years have resulted in enhanced protections against wrongful convictions

based on false confessions. These developments have largely rendered the *corpus delicti* rule unnecessary and obsolete.

First, for nearly a hundred years, the Supreme Court has recognized that the Due Process Clause protects against coerced or involuntary confessions. In *Brown v. Mississippi*, the Supreme Court observed that "the trial . . . is a mere pretense where the state authorities have contrived a conviction resting solely upon confessions obtained by violence." 297 U.S. 278, 286 (1936). Thus, a confession procured through physical force or duress cannot validly support a conviction. *Id.* at 287. The Court subsequently clarified that psychological coercion similarly violates due process, including subjecting suspects to extensive questioning while denying them sleep, food, legal advice, or contact with family. *See, e.g.*, *Haynes v. Washington*, 373 U.S. 503, 513 (1963) (suspect prohibited from calling his wife until after he confessed); *Reck v. Pate*, 367 U.S. 433, 441–42 (1961) (suspect held for eight days, was without adequate food, counsel, or the assistance of family or friends, and was physically weak and in pain); *Spano v. New York*, 360 U.S. 315, 322–23 (1959) (suspect's requests to call his retained counsel were denied); *Watts v. Indiana*, 338 U.S. 49, 52–55 (1949) (suspect was held for six days and regularly questioned late into the night); *Ashcraft v. Tennessee*, 322 U.S. 143, 153–54 (1944) (suspect questioned for thirty-six hours without sleep).

In addition to prohibiting coercive interrogations, the Supreme Court requires law enforcement to inform suspects of their right to counsel and their right against self-incrimination prior to custodial interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 476-79 (1966); *see also Wilkerson v. State*, 173 S.W.3d 521, 527 (Tex. Crim. App. 2005)

("[T]he *Miranda* rule is intended to guard against coercive custodial questioning by police; it protects a suspect from the possibility of physical or psychological 'third degree' procedures.") (internal quotation marks and citation omitted). If a suspect chooses to invoke his right to remain silent, police must stop all questioning. *Miranda,* 384 U.S. at 474. If he invokes his right to counsel, questioning must cease until he has been afforded the opportunity to consult with counsel. *Id.*; *see also Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981) (holding that once suspect invokes right to counsel during custodial interrogation, all questioning must cease "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police"). The Supreme Court noted in *Miranda* that the presence of an attorney reduces the chances of coercive police tactics and increases the likelihood "that the accused gives a fully accurate statement to the police . . . ." *Miranda*, 384 U.S. at 470. Each of these procedural requirements helps guard against the possibility of law enforcement "trad[ing] on the weakness of individuals" to obtain a confession. *Id.* at 455.

In addition to these safeguards, courts also protect against coerced confessions by looking to the totality of the circumstances under which a confession was made to ensure it was free and voluntary. *Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991); *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960). This may include not only circumstances suggesting mental or physical coercion by law enforcement, but also a consideration of the defendant's mental state at the time of the confession, including any history of mental illness. *See, e.g.*, *Davis v. State*, 313 S.W.3d 317, 337 (Tex. Crim. App. 2010) (requiring that courts assess "the characteristics of the accused and the details of the interrogation" because "a

confession given under the duress of hallucinations, illness, medications, or even a private threat could render a statement involuntary") (quotation marks and citation omitted); *Delao v. State*, 235 S.W.3d 235, 239–41 (Tex. Crim. App. 2007) ("[A]n accused's mentality is but one factor among many to consider when evaluating the voluntariness of a confession."). The Texas Code of Criminal Procedure additionally contains numerous safeguards against the admissibility of an involuntary statement. *See* TEX. CODE CRIM. PROC. art. 38.21 (providing that statement is admissible only if "freely and voluntarily made without compulsion or persuasion"); 38.22 (setting forth procedural and substantive requirements for admissibility of out-of-court statements). Given the emergence of these extensive constitutional and statutory safeguards, individuals need not rely on the *corpus delicti* rule to protect against the possibility of a coerced or involuntary confession, for the confession will be suppressed if it was not made knowingly, intelligently, and voluntarily. Thus, the original rationale for the *corpus delicti* rule—preventing individuals operating under duress or mental illness from confessing to an imaginary crime—is already satisfied through these other more recent developments in the law.

Even more fundamental than the foregoing protections, however, modern notions of due process require the prosecution to prove all the elements of its case beyond a reasonable doubt, and this requirement affords defendants an added layer of protection against wrongful conviction. *In re Winship*, 397 U.S. 358, 364 (1970). The standard "plays a vital role" in protecting the accused and "is a prime instrument for reducing the risk of convictions resting on factual error." *Id.* at 363. "Reasonable doubt" has been defined as harboring doubt based on reason, demanding moral certainty of the defendant's guilt, and

requiring a jury to acquit unless it is firmly convinced of the defendant's guilt.[1] The jury is free to acquit if it determines that the State's evidence, including the defendant's confession, does not satisfy this burden.[2] In light of this rigorous standard that has been deemed adequate to protect a defendant's constitutional rights against arbitrary or irrational verdicts, it makes little sense to also require proof of the *corpus delicti*, particularly since doing so is neither constitutionally nor statutorily sanctioned.

In addition to the foregoing, I note here that courts in several other jurisdictions have abandoned the *corpus delicti* rule based on extensive criticisms of the rule and its effectiveness in protecting against wrongful convictions. For example, in *State v. Mauchley*, the Utah Supreme Court abandoned the rule after conducting an extended analysis of the rationales underlying the rule. 67 P.3d 477 (Utah 2003). The court reasoned that the rule "inadequately safeguards individuals from the consequences of their false confessions" because it fails to protect against the most common scenario—where an individual confesses to a crime that *did* occur but was committed by someone else. *Id.* at 483. The court also observed that the rule may obstruct justice in cases where a crime lacks a tangible injury (as in cases such as this one involving an assault of a child). *Id.* at 484. Further, citing the constitutional and procedural safeguards discussed above, the court reasoned that in light of those developments that protect against coerced confessions, "retaining the *corpus delicti* rule for this purpose is unnecessary[.]" *Id.* at 486. Finally, the

---

[1] *See Reasonable Doubt: An Argument Against Definition*, 108 HARV. L. REV. 1955, 1968 (1995).

[2] The Due Process Clause also gives the State an affirmative duty to disclose any relevant evidence that tends to negate guilt or mitigate punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see also* TEX. CODE CRIM. PROC. art. 39.14(h). This provides an additional safeguard against wrongful convictions based on coerced or false confessions.

court observed that the rule had become unworkable in the modern era given the growing number and complexity of criminal offenses, which frequently means that the *corpus delicti* is difficult to define or prove. *Id.* at 487-88 (observing that the rule is "ill-equipped to adapt to the changing face of criminal law"). The court thus determined that the rule "was ill-conceived and originally erroneous" and should be abandoned because it "inadequately protects the innocent, yet allows the guilty to go free." *Id.* at 485, 488. Courts in other jurisdictions have echoed this reasoning in abandoning the rule. *See, e.g., People v. La Rosa,* 293 P.3d 567, 575 (Colo. 2013) (abandoning *corpus delicti* rule after concluding that it was "too rigid in its approach, too narrow in its application, and too capable of working injustice in cases where, as here, evidence of the *corpus delicti* is not only non-existent but impossible to uncover"); *State v. Suriner*, 294 P.3d 1093, 1100 (Idaho 2013) ("The rule as applied does not protect against false confessions, but even its limited application can be an impediment to convicting the guilty. Because the harm caused by the rule exceeds whatever benefits there may be, we hold that the *corpus delicti* rule no longer applies in Idaho."). The rising tide of criticism against the *corpus delicti* rule justifies this Court's reconsideration of whether the rule continues to serve any legitimate purpose or whether it instead, as many courts have concluded, now does more harm than good.

I also note that, in another recent case, this Court was asked to abolish the *corpus delicti* rule but declined to do so, instead creating yet another exception to the rule (there, by recognizing a "closely related crime" exception). *Miller*, 457 S.W.3d at 920, 922 (upholding conviction for aggravated sexual assault and concluding that "a strict application of the *corpus delicti* rule is unnecessary when a defendant confesses to multiple

criminal offenses within a single criminal episode or course of conduct if the crimes confessed to are sufficiently proximate that the underlying policy reasons for the rule are not violated"). Given the Court's approach in *Miller* and the instant case, it appears likely that, even if the *corpus delicti* rule technically remains a part of Texas law, it will continue to be abrogated through the creation of new exceptions based on policy concerns. But, as the Utah Supreme Court noted in its analysis of this issue, "numerous exceptions can soon subsume a rule," and the better course where a rule has been shown to be unworkable in many applications is to simply abandon it, rather than trying to "work around the rule to achieve justice." *Mauchley*, 67 P.3d at 488. Although I agree with the Court's approach in the instant case because no party has expressly asked the Court to abandon the *corpus delicti* rule here, as a general proposition, I would not continue down the path of creating new exceptions to the rule as a "work around" when the better course is simply to abolish an outdated and unworkable rule.

In sum, given the evolution of constitutional and statutory law in such a manner as to provide ample protections against false confessions to crimes that never occurred, there is no need for the *corpus delicti* rule in Texas criminal law. It is a court-created doctrine, and our Legislature has never deemed it worthy of codification. Rather than continuing to chip away at the rule by recognizing exceptions on a case-by-case basis, we should instead, in an appropriate case, abandon the rule entirely as it no longer serves any legitimate purpose and creates a windfall for defendants who have otherwise validly confessed to their crimes. With these comments, I join the Court's opinion.

FILED: February 2, 2022
PUBLISH