**Opinion filed October 28, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00395-CR

_____

## RAUL GAMEROS, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-17-0504-CR**

## MEMORANDUM OPINION

The jury convicted Appellant, Raul Gameros, Jr., of the third-degree felony offense of driving while intoxicated (DWI) 3rd or more. Appellant stipulated to two prior misdemeanor DWI convictions for jurisdictional purposes. Appellant pled not true to two felony enhancement allegations. The trial court subsequently found that both of the felony enhancement allegations were true and assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of

Criminal Justice for a term of forty years. Appellant presents two issues on appeal. First, he asserts that the trial court's denial of his motion to suppress was an abuse of discretion. Second, he contends that the evidence at trial was legally insufficient to find Appellant guilty of operating a motor vehicle while intoxicated. We affirm the judgment of the trial court.

*Background Facts*

Deputy Joshua Pool of the Ector County Sherriff's Office was dispatched to the area of Yukon and West Loop 338 for a welfare check at 10:20 p.m. on January 30, 2016. On arrival at 10:22 p.m., he observed a vehicle, with its brake lights on and the engine still running, parked on one side of the center median within two feet of the paved shoulder but facing opposite of and into the direction of oncoming traffic. Alone in the vehicle, Appellant was lying back in a reclined driver's seat and, according to Deputy Pool, appeared to be "in and out" of sleep or consciousness. Deputy Pool asked Appellant if he was okay, and Appellant replied, "yes." Appellant then followed Deputy Pool's instructions and put the vehicle into park.

Deputy Pool suspected Appellant was intoxicated, but because he did not smell any odor of alcohol, Deputy Pool assumed that the use of another substance had caused Appellant's odd behavior. Deputy Pool then asked Appellant if he had been "smoking" because he had glassy eyes, dilated pupils, and slurred speech. Appellant, still seated in his own vehicle, replied that he had been smoking and handed Deputy Pool a package of synthetic marihuana, or "spice." At this time, in compliance with departmental policy, Deputy Pool called the Department of Public Safety (DPS) to perform standardized DWI field sobriety tests (SFSTs). Deputy Pool asked Appellant to step out of the vehicle, and during a *Terry*[1] frisk for

---

[1]*Terry v. Ohio*, 392 U.S. 1 (1968)

weapons, another officer on scene, Deputy Alsbrooks, asked Appellant how much he had smoked that day. Appellant's answer was not discernable on the video submitted into evidence and was not provided during trial testimony. Although the detention included handcuffing Appellant, Deputy Pool twice stated that Appellant was not under arrest. Deputy Alsbrooks then took Appellant to a patrol unit to wait for DPS to arrive. Deputy Pool explained that, at night, it is "safer inside of a marked unit that has the lights on"; that, if Appellant tried, he would be unable to run away; and that it would also keep Appellant out of the cooler January weather. A search of Appellant's vehicle uncovered two additional packages of synthetic marihuana.

DPS Trooper Landon Rabun arrived on the scene around 10:30 p.m. Within five minutes of Trooper Rabun's arrival, Appellant was taken out of the marked patrol unit, and the handcuffs were removed. Trooper Rabun observed that Appellant was unbalanced, was slurring his speech, and had bloodshot eyes. Trooper Rabun had to explain SFST instructions multiple times to Appellant. Appellant completed the horizontal gaze nystagmus test, and Trooper Rabun testified that he detected four out of six possible clues that were consistent with intoxication. Throughout Trooper Rabun's explanation of the walk-and-turn test, Appellant told him: "I can't do that," or "I won't be able to do it." When asked why, Appellant told Trooper Rabun that he had taken "a couple of hits." At one point during the instructions, Appellant even said, "Let's just go on and go to jail." When asked to perform the walk-and-turn test, Appellant turned around and put his arms behind his back as an indicator for Trooper Rabun to arrest him.

Trooper Rabun asked Appellant how intoxicated he was on a scale of zero to ten, and Appellant replied, "about a five, maybe a six." Following this admission, Trooper Rabun told Appellant he was under arrest for DWI. Trooper Rabun then handcuffed Appellant and secured him in the front seat of the DPS patrol vehicle.

*Issue One*

In his first issue, Appellant contends that the trial court abused its discretion by denying his motion to suppress a portion of the video from Deputy Pool's body camera. Appellant contends that upon being initially handcuffed, he was in custody for purposes of the Fourth Amendment, had the right not to incriminate himself pursuant to the Fifth Amendment, and should have been *Mirandized*[2] when initially handcuffed.

*A. Standard of Review*

A trial court's ruling on a motion to suppress evidence is reviewed for an abuse of discretion and should only be reversed if the outcome is outside the zone of reasonable disagreement. *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021) (citing *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018); *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014)). When there is a mixed question of law and fact, we apply a bifurcated standard of review. *Wexler*, 625 S.W.3d at 167. Total deference is given to the trial court's factual assessment of the circumstances surrounding the questioning. *Id.* If the trial court does not make explicit findings of fact, "we view the evidence in the light most favorable to the ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* (citing *Herrera v. State*, 241 S.W.3d 520, 527 (Tex. Crim. App. 2007)).

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* The party

---

[2]*See Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

that prevailed in the trial court is provided all reasonable inferences that may be drawn from that evidence. *Wexler*, 625 S.W.3d at 167. We will sustain the trial court's decision if it is correct on any theory of law applicable to the case. *Arguellez v. State*, 409 S.W.3d 657, 662–63 (Tex. Crim. App. 2013); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005).

"Custody is a mixed question of law and fact that does not turn on credibility and demeanor unless the witness testimony, if believed, would always decide the custody question." *Wexler*, 625 S.W.3d at 167; *see State v. Saenz*, 411 S.W.3d 488, 494 (Tex. Crim. App. 2013). We review de novo the ultimate legal determination of whether the person was in custody under those circumstances. *See Kelly*, 204 S.W.3d at 818. If a suspect is in custody, any statements produced by custodial interrogation are inadmissible unless the accused is first provided the requisite warnings pursuant to *Miranda* and Article 38.22. *Wexler*, 625 S.W.3d at 167; *see also Miranda v. Arizona*, 384 U.S. 436, 479 (1966); TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2018). A custody determination requires two inquiries: an inquiry into the circumstances surrounding the interrogation and an inquiry into whether a reasonable person in those circumstances would have felt that he was not free to leave. *Wexler*, 625 S.W.3d at 167 (citing *Thompson v. Keohane*, 516 U.S. 99, 100 (1995)). The Court of Criminal Appeals has outlined four general situations that may constitute custody:

> (1) the suspect is physically deprived of her freedom of action in any significant way, (2) a law enforcement officer tells the suspect that she cannot leave, (3) law enforcement officers create a situation that would lead a reasonable person to believe her freedom of movement has been significantly restricted, or (4) there is probable cause to arrest, and law enforcement officers do not tell the suspect that she is free to leave.

*Wexler*, 625 S.W.3d at 167−68 (citing *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996)). In the first three situations, the restriction of movement must

amount to the degree associated with an arrest, rather than an investigative detention. *Id.* at 168. The fourth situation requires that the officer's subjective intent be either "communicated or otherwise manifested to the suspect." *Id.*; *see also Dowthitt*, 931 S.W.2d at 254 (citing *Stansbury v. California*, 511 U.S. 318, 324−25 (1994) (An officer's subjective intent is irrelevant if it was never conveyed to the suspect)).

Generally, routine traffic stops do not place a person in custody for *Miranda* purposes, even though a person temporarily detained pursuant to a traffic stop would not feel free to leave. *Id.* at 169; *see Berkemer v. McCarty*, 468 U.S. 420, 436−40 (1984); *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). "A traffic stop can escalate from a non-custodial detention into a custodial detention when formal arrest ensues or a detainee's freedom of movement is restrained 'to the degree associated with a formal arrest.'" *Ortiz*, 382 S.W.3d at 372 (quoting *Berkemer*, 468 U.S. at 440). Whether a person has been detained to the degree associated with an arrest is considered on a case-by-case basis. *Id.* Two inquiries are required for custody determinations: "the circumstances surrounding the interrogation and whether a reasonable person in those circumstances would have felt that [he] was not free to leave." *Wexler*, 625 S.W.3d at 167; *see also Thompson*, 516 U.S. at 112. Whether, under the circumstances, a reasonable person would believe there was a restraint on his freedom of movement of a degree associated with an arrest is an objective test. *Wexler*, 625 S.W.3d at 167. The reasonable person standard presupposes an innocent person. *Id.*

To determine whether a reasonable person in the suspect's position would have felt that the restraint on his freedom of movement was to the degree associated with arrest, "the record must establish the circumstances manifested to and experienced" by the suspect. *Id.* at 168; *see also Thompson*, 516 U.S. at 113; *Berkemer*, 468 U.S. at 442; *Ortiz*, 382 S.W.3d 367. The defendant bears the burden to show that his statement was the product of a custodial interrogation. *Wexler*, 625

S.W.3d at 168. The circumstances of the interrogation depend upon several factors, including:

> the amount of force displayed, the duration of detention, the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location, the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation, and any other relevant factors.

*State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008).

When the degree of incapacitation appears to be more than necessary to safeguard the officers or secure the suspect's presence during the investigation, these factors will suggest that there has been an arrest. *Id.* Handcuffs and confinement in patrol vehicles does not always indicate that a person is in custody. *See Koch v. State*, 484 S.W.3d 482, 490–91 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (Where officer told the defendant that he was not under arrest, but then handcuffed and placed him in the back of the patrol vehicle for approximately fifteen minutes while waiting for a specialized DWI officer to arrive, an investigatory detention was "not converted to an arrest."); *Hauer v. State*, 466 S.W.3d 886, 891– (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that the defendant was not arrested, but merely temporarily detained for the purpose of investigating a DWI when the sole officer on the scene of an accident, pursuant to department policy to ensure safety, handcuffed the defendant and placed him in a patrol vehicle to await a DWI investigator, who arrived thirty minutes later).

*B. Analysis - The questioning was not custodial and the subject's response was unintelligible.*

Appellant argued in his motion to suppress, and now on appeal, that he was in custody when he was initially placed in handcuffs and put in Deputy Pool's patrol unit prior to the arrival of Trooper Rabun. Appellant concedes that his answers to Deputy Pool's questions before Appellant was requested to step out of his vehicle

and was handcuffed are not at issue in the motion to suppress. Appellant limited his oral suppression motion to Deputy Pool's personal body camera video; Deputy Pool was referred to in the motion as the "first witness" and the officer who made the initial contact with Appellant. The trial court denied the motion to suppress; however, the motion was re-urged on the same basis when the State offered the video during Deputy Pool's direct testimony. The State subsequently played the objected-to video for the jury. In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing because the trial court's ruling was based on that evidence rather than on evidence introduced later. *See Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). Here, at the time Appellant re-urged his motion to suppress, no new evidence was before the trial court. *See Rachal*, 917 S.W.2d at 809.

The trial court made explicit oral findings of fact following the motion to suppress in conjunction with its denial of the motion:

> The Court finds that the officer specifically told the suspect that he was being detained, and he was not under arrest. The Court finds that the investigative process was just underway. The questions were asked in this case while the defendant was seated in his car, and as he exited, and shortly after he exited the vehicle, the degree of incapacitation was reasonable to safeguard the officers and assure the suspect's presence during the initial stop. The questions asked do not appear to this Court to exceed the number or type of questions that are appropriate for and during an investigative detention, and based upon the foregoing, the motion is respectfully denied.

When a trial court provides explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818. In reviewing the facts, and in consideration of the *Sheppard* factors, the trial court's ruling in this case is supported by the facts presented in Deputy Pool's admitted video.

We note that Appellant overstates the facts when arguing which questions were made in violation of his *Miranda* and Article 38.22 rights. All of the questions, save for one, were asked of Appellant while he was still seated in his own vehicle and before he was handcuffed. Once Appellant was handcuffed, there was only one question asked of him, "How much of that crap did you smoke today?" However, Appellant's answer was slurred and unintelligible, and no witness gave testimony as to what Appellant's purported response was to that question. Further, the mere handcuffing of Appellant in an impaired state within four minutes of Deputy Pool's first approach to Appellant's vehicle does not constitute custody under these circumstances. When Appellant first exited the vehicle, Deputy Pool immediately stated, "I'm just going to detain you for the time being. Go ahead and turn around and face your car for me? You're not under arrest you're just being detained, ok?" We hold that Appellant was not in custody during law enforcement's questioning of him. Accordingly, any and all statements made by Appellant and to which he objected to in the motion to suppress and the re-urging thereof were not made by him in a custodial setting, and thus were admissible.

Appellant argued at the suppression hearing that, "after the cuffs are on, [the deputy] says, 'How much did you smoke?' and 'When did you smoke it?' and 'What was it?'" and that Appellant's replies to those questions were inadmissible. Appellant's allegedly objectionable *answers*, which he claimed should be excluded from the admitted bodycam video, were never identified by Appellant's trial counsel during the hearing on the motion to suppress. There is evidence of one question, asked by Deputy Alsbrooks when Appellant was handcuffed, but the record and video do not provide a response of perceptible meaning by Appellant—if there was one.

We are unable to determine what statements in particular, made by Appellant in response to questioning after he was handcuffed, that Appellant attempted to

9

suppress. Trial counsel for Appellant did not specify what answers were given that he alleged should have been suppressed, and he did not distinguish those statements from statements that Appellant had made *before* being asked to exit the vehicle and being handcuffed, which Appellant admits were not custodial. The objectionable content of Appellant's answers was not provided at the time the motion to suppress was initially argued or re-urged at trial and it is not specified in Appellant's brief. It should be noted that the trial court's findings refer to the *questions* asked and make no reference to any answer given by Appellant. Despite a careful review of the evidence and the record, there appears to be no intelligible response made by Appellant after he was handcuffed, and no such alleged statements were presented to the jury. Based on the foregoing, we hold that the trial court did not abuse its discretion in denying Appellant's motion to suppress. Accordingly, we overrule Appellant's first issue.

*Issue Two: Evidentiary Sufficiency*

In his second issue, Appellant contends that the evidence presented in this case was insufficient to establish that he drove or operated a motor vehicle in a public place while intoxicated. Specifically, Appellant argues that there are no witnesses who can corroborate that he was driving (or operating) the vehicle.

*A. Standard of Review*

*1. Jackson Test*

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288−89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense

beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899.  The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination.  *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

### 2. Corpus Delicti Doctrine

Appellant also raises an issue under the doctrine of *corpus delicti*.  The *corpus delicti* rule is one of evidentiary sufficiency affecting cases in which there is an extrajudicial confession.  *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013).  "The rule states that, '[w]hen the burden of proof is "beyond a reasonable doubt," a defendant's extrajudicial confession does not constitute legally sufficient evidence of guilt absent independent evidence of the corpus delicti." *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015) (alteration in original)

11

(quoting *Hacker*, 389 S.W.3d at 865). To satisfy the *corpus delicti* rule, there must be "evidence independent of a defendant's extrajudicial confession show[ing] that the 'essential nature' of the charged crime was committed by someone." *Hacker*, 389 S.W.3d at 866; *see Salazar v. State*, 86 S.W.3d 640 (Tex. Crim. App. 2002). Evidence in cases involving extrajudicial confessions must not only be legally sufficient under *Jackson*, but "must tend to show the *corpus delicti* of the offense." *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021) (citing *Miller*, 457 S.W.3d at 924). "The analysis focuses only on whether someone committed the crime, but it is not as rigorous as the *Jackson* legal sufficiency review." *Harrell*, 620 S.W.3d at 914 (citing *Threet v. State*, 250 S.W.2d 200 (1952)). The purpose of this rule is to prevent a conviction based on a confession to an imaginary crime. *Id.*

## B. Analysis

We hold that the evidence in this case is legally sufficient under *Jackson* and satisfies the requirements under the *corpus delicti* doctrine.

### 1. Jackson Test

We measure sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, and does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offence for which the defendant was tried." *Id*. Section 49.04(a) of the Texas Penal Code provides that a person commits the offense of driving while intoxicated when he (1) was intoxicated (2) while operating a motor vehicle (3) in a public place. Appellant's evidentiary challenge focuses only on the second element of the offense, i.e., operating a motor vehicle. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2020).

The Penal Code does not define "operating" in this context; however, in *Denton*, the Court of Criminal Appeals adopted a totality of the circumstances approach to determine whether a defendant was "operating" a motor vehicle. *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995). The evidence is sufficient to prove the defendant was operating a motor vehicle where the totality of the circumstances "demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Id.* at 390. The action need not succeed in causing the vehicle to function for the person to be operating it. *Strong v. State*, 87 S.W.3d 206, 215 (Tex. App.—Dallas 2002, pet. ref'd) (citing *Freeman v. State*, 69 S.W.3d 374, 376 (Tex. App.—Dallas 2002, no pet.)). While driving involves operation, operation of a vehicle does not necessarily involve driving. *Denton*, 911 S.W.2d at 389. "Because 'operating a motor vehicle' is defined so broadly, any action that is more than mere preparation toward operating the vehicle would necessarily be an 'action to affect the functioning of a vehicle in a manner that would enable the vehicle's use.'" *Strong*, 87 S.W.3d at 216 (quoting *Barton v. State*, 882 S.W.2d 456, 459 (Tex. App.—Dallas 1994, no pet.)).

Texas courts have upheld DWI convictions in cases where a person is not driving or moving the vehicle. *See, e.g.*, *Milam v. State*, 976 S.W.2d 788, 789 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (the defendant passed out in vehicle in a parking lot, with the engine running, the vehicle in gear, and his foot on the brake); *White v. State*, 412 S.W.3d 125, 127 (Tex. App.—Eastland 2013, no pet.) (the defendant was sitting in a McDonald's drive through lane, "passed out" behind the steering wheel of the vehicle with the engine running, the transmission in drive, and the brake lights illuminated); *Freeman*, 69 S.W.3d at 375−76 (the defendant was asleep in the driver's seat of a vehicle resting against the curb of a public street, while the engine was running, the gear was in "drive," and the lights were on).

Appellant contends that there is no evidence that he was driving or operating a vehicle in a public place because the vehicle in which he was seated had stopped when he was approached by law enforcement. However, his contention misinterprets what the case law has determined is sufficient to prove the "operation" of a motor vehicle for DWI purposes. The evidence is sufficient under *Jackson* because a rational jury could find each essential element of the offense beyond a reasonable doubt when considering all the admitted evidence—including Appellant's extrajudicial confession. In this case, not only did Appellant confess that he had been driving and smoking synthetic marihuana, Appellant was also found alone in a vehicle on the side of a highway and was seated in the driver's seat, with the engine running, the vehicle in gear, and the brake lights illuminated. The facts in this case are strikingly similar to those in *Milam*, *White*, and *Freeman*. As in those cases, it was enough that the vehicle could be moved at the time Appellant was found. Additionally, Appellant told the officers on the scene that he would not be able to perform SFSTs because he had previously smoked synthetic marihuana. The totality of the evidence demonstrates that the Appellant took actions that would enable the vehicle's use and that he was "operating" a motor vehicle under the law.

### 2. Corpus Delicti Doctrine

The evidence is also sufficient to show the *corpus delicti* of DWI. Absent Appellant's confession, the evidence still tends to show that Appellant was operating the vehicle. In *Harrell*, the defendant was in the driver's seat with the seatbelt buckled, and a passenger told the officer that defendant was "supposed to be the sober one." *Harrell*, 620 S.W.3d at 915. The *Harrell* court concluded that the "evidence tends to support that someone in the minivan was operating it on the highway when 911 was called." *Id.* Similarly, in the case now before us, Appellant was found in the driver's seat, but the vehicle was on the side of the highway in a grassy median, the vehicle was in gear, the engine was running, and Appellant had

his foot on the brake. Appellant was also the only person in the vehicle when the officers arrived at the scene and Appellant did not indicate that there was ever anyone else there that evening. The evidence tends to show that Appellant operated a vehicle in a public place and that he did so while he was impaired. Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

October 28, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.