**Opinion filed September 19, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00180-CR

_____

## MICHAEL BRYAN CASTILLO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. A-22-1278-CR**

## M E M O R A N D U M   O P I N I O N

Appellant, Michael Bryan Castillo, was originally charged by indictment in separate cause numbers for twenty-five counts of possession of child pornography (trial court cause number A-22-1278-CR), each count a third-degree felony offense, and one count of aggravated sexual assault of a child (trial court cause number A-22-1279-CR), a first-degree felony offense. *See* TEX. PENAL CODE ANN. §§ 22.021(a)(1)(B), (a)(2)(B) (West 2019), § 43.26(a) (West Supp. 2023). The State

filed a motion to consolidate the above trial court cause numbers for purposes of trial. The trial court granted the State's motion, and, after the trial court signed its order, the State reindicted Appellant for the same offenses—possession of child pornography (Counts One through Twenty-Five of the reindictment) and aggravated sexual assault of a child (Count Twenty-Six of the reindictment). *See* PENAL §§ 22.021(a)(1)(B), (a)(2)(B), 43.26(a).

Appellant pled guilty before the jury to the twenty-five counts of possession of child pornography as alleged in the reindictment, and not guilty to aggravated sexual assault of a child. The jury found Appellant guilty of all twenty-six counts and assessed Appellant's punishment at imprisonment for (1) ten years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for each conviction for possession of child pornography and (2) life for the conviction for aggravated sexual assault of a child. The trial court sentenced Appellant accordingly and ordered that Appellant's sentences for the twenty-five convictions for possession of child pornography be served consecutively.

In two issues on appeal, Appellant contends that (1) the trial court erred when it granted the State's motion to consolidate the cases for trial and (2) the evidence is insufficient to support his conviction for aggravated sexual assault of a child. We affirm.

I. *Factual Background*

On March 15, 2022, Texas Department of Public Safety (DPS) Special Agent Michael Sams began investigating multiple downloads of suspected child pornography that originated from an IP address in Ector County. Special Agent Sams testified that approximately 9,800 files—comprised of images and videos of child pornography—were downloaded from the internet by the identified IP address between December 26, 2021, and March 8, 2022.

2

After investigating the specific IP address for the offending account, Special Agent Sams determined that Appellant was a suspect in the child pornography investigation. In August 2022, Special Agent Sams forwarded his investigation to DPS Special Agent Erich Whaples in Midland, who obtained a search warrant for the residence associated with the offending IP address. On August 10, 2022, DPS agents served and executed the search warrant at the suspected residence in Ector County. During their search, law enforcement recovered cell phones—including a blue Samsung cell phone—computers, and flash drives from the residence.

Following the execution of the search warrant, Appellant was interviewed by Special Agent Whaples and DPS Special Agent Michelle Wilson; the interview was recorded, and Appellant was given his statutory warnings. During the interview, in which Appellant voluntarily participated, Appellant admitted that the blue Samsung cell phone belonged to him. Appellant told Special Agent Wilson that he had been accessing child pornography online for approximately ten years. Appellant said that he searched and viewed images of children ranging from ages three to fourteen on the "dark web." Appellant admitted that he watched the pornographic videos for sexual gratification and stated that he would "insert himself into the videos and pretend as if he was the adult in the video with the child." Appellant also told Special Agent Wilson that he used the blue Samsung cell phone as "a secondary cell phone . . . to conceal the information from other people."

At trial, Special Agent Whaples confirmed that Appellant's blue Samsung cell phone contained child pornography of both male and female minor children. When asked if he "had ever acted on any of [his] inclinations," Appellant admitted to two separate instances where he had sexual contact with a child. Appellant told the DPS agents that he had "sexual contact" with his five-year-old nephew, I.R., in a trailer behind his house. Appellant said that the sexual contact had occurred around five or six years prior to the interview. Appellant stated that he took I.R. into the hallway

3

of the trailer and taught I.R. how to perform oral sex on him; I.R. then performed oral sex on Appellant for approximately one minute. When asked about why he only sexually assaulted I.R. and not I.R.'s older brother, Appellant stated that he targeted I.R. because he looked up to Appellant and was less likely to "tell on" Appellant. Appellant stated that he did not sexually assault I.R. again because he wanted to avoid getting caught.

Appellant also told the DPS agents that he engaged in sexual contact with his ten-year-old sister when he was sixteen. Appellant recounted going into his sister's room at night, "pull[ing] down her panties, and touch[ing] . . . her genitals." Appellant then "[laid] over the top of" his sister and "dry hump[ed]" her. Appellant was arrested for possession of child pornography after the interview concluded.

Special Agent Whaples then began investigating Appellant's sexual assault of I.R. He contacted I.R.'s mother and arranged a Child Advocacy Center (CAC) forensic interview with I.R. at Harmony Home in Odessa. I.R. was eleven at the time of the interview. Special Agent Whaples was in a separate room observing I.R.'s CAC interview, and he stated that I.R.'s demeanor during the interview was calm and reserved. Special Agent Whaples testified that I.R. did not make an outcry during the interview. Additionally, Special Agent Whaples stated that he was not able to determine the specific date that Appellant had sexually assaulted I.R.

On April 25, 2023, the State moved to consolidate all the indicted offenses for trial. In its motion, the State asserted that all offenses arose from the same set of facts and that any evidence to establish that Appellant possessed child pornography would also be offered to prove that he committed the offense of aggravated sexual assault of I.R. On April 26, 2023, the trial court signed its consolidation order.[1] On

---

[1]While the trial court's order granting the State's motion for consolidation stated that it "heard the arguments of counsel," there is no indication in the record that the trial court conducted a hearing on the State's motion.

June 20, 2023, the State filed a motion to amend the indictment to change the occurrence date for the allegation of aggravated sexual assault of a child from December 30, 2010, to December 30, 2015. On June 21, 2023, the State reindicted Appellant. The reindictment mirrored the same offenses that were included in the original indictment—twenty-five counts of child pornography (Counts One through Twenty-Five) and one count of aggravated sexual assault of a child (Count Twenty-Six). Following this, the trial court granted the State's motion to amend, and the occurrence date for the offense of aggravated sexual assault of a child was changed in the reindictment to December 30, 2015.

Appellant's trial commenced on July 25, 2023. I.R.'s mother testified that Appellant is married to her sister, and that I.R. was twelve at the time of trial. I.R.'s mother testified that she, her sister, and her children—including I.R.—began living in her mother's house in 2012 when I.R. was two. I.R.'s mother testified that her mother would typically watch her children, and that Appellant had access to I.R. almost every day "for years." She also testified that I.R. had a special affinity for Appellant as being a "father figure" in his life.

I.R.'s mother stated that Appellant and her sister had a trailer at the back of her mother's house with couches, a television, and video games set up for I.R. and his brother to use. I.R. and his brother would often spend time at the trailer playing videogames with Appellant; I.R.'s mother was also aware that I.R. would occasionally be alone with Appellant in the trailer. She testified that I.R. and Appellant played together at the trailer over a two- or three-year period, including in 2015 when I.R. was five.

When I.R. was eleven—around six months before Appellant's arrest—I.R.'s mother noticed changes in I.R.'s behavior after he attended a sex education class at school. She testified that, prior to attending the sex education class, I.R. "would call [Appellant]," and ask if he could "spend the night" or "go play." However, after the

sex education class had concluded in 2021, I.R. began "distancing himself from [Appellant]," I.R. no longer expressed any interest in spending time with Appellant, and he stopped asking his mother if he could see Appellant. I.R.'s mother testified that although I.R. was invited to go to Appellant's house, I.R. did not want to go to Appellant's house anymore. She testified that, at some point, she forced I.R. to go to Appellant's house, which caused I.R. to cry because "he didn't want to go."

I.R.'s mother testified that I.R. is not an emotional child. She stated that I.R. "doesn't show his emotions," and tends to "shut down" and internalize his feelings. She had tried talking to I.R. about Appellant, but I.R. avoided having any discussion about Appellant by either changing the subject of the conversation, saying that "he doesn't know," that "he's getting a headache," or by leaving the room.

Stephanie Schoen, the mental health director and a licensed therapist at Harmony Home, testified to the general aspects of "grooming" a child in the context of sexual abuse. According to Schoen, grooming occurs when an adult fosters a relationship with a child to gain the child's trust, and to create opportunities to sexually abuse a child by isolating the child. Schoen stated that perpetrators often use video games, and play video games with a child, to "groom" and gain the child's trust. Schoen also testified that a "father figure" relationship is common in grooming situations that involve young boys.

Schoen testified about the reasons why a child victim of sexual abuse may not make an outcry or refuse to talk to others about the sexual abuse they had experienced. First, a child may experience guilt over their "role" in the sexual abuse; in these situations, a child may believe that they caused or contributed to the sexual abuse. Second, the child may fear losing an important relationship in their life—such as the child's relationship with a "father figure"—because the child believes that their relationship with the perpetrator is more important than the trauma that the

sexual abuse caused. Schoen also testified that it is more common for girls to outcry than boys.

According to Schoen, children who were under the age of seven when they were sexually abused may not always understand that "something bad had happened to them," especially if the perpetrator was someone with whom the child has or had an important relationship. Schoen stated that children may not know that sexual abuse occurred because "we teach our children to not question adults." Schoen testified that it is common for children not to recognize or understand that they experienced something that was "not okay" until they are educated about body safety at school. It is also common for a child victim to exhibit behavioral changes after attending sex education classes at school.

Schoen further testified that there is a correlation between individuals who view child pornography and those who sexually abuse children. An individual who views child pornography may develop a tolerance to the pornography, which may cause an offender to look for an "accessible" child to victimize. Schoen stated that one's act of viewing images of prepubescent children would indicate that the individual is a possible pedophile, and that an individual's preferred type of pornography is not necessarily dictated by sexual preference. Schoen testified that sexual offenders often pursue children who are isolated—such as children who are "insecure," have little to no supervision, or live in "chaotic homes"—and that it is common for an offender to use their familial relationship with a child to isolate and gain "easy access" to a child. According to Schoen, most sexual assaults occur when the victim knows the offender, and that a one-time sexual occurrence can arise from these types of situations.

## II. *Sufficiency of the Evidence*

In his second issue, Appellant challenges the sufficiency of the evidence that he committed the offense of aggravated sexual assault against I.R. as alleged in

Count Twenty-Six of the reindictment. Specifically, Appellant argues that, pursuant to the corpus delicti rule, there is insufficient evidence to support his conviction for this offense if his judicial confession is disregarded.

We review a challenge to the sufficiency of the evidence, regardless of whether it is framed as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Garcia v. State*, 667 S.W.3d 756, 761 (Tex. Crim. App. 2023).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007); *Garcia*, 667 S.W.3d at 762 ("[A] reviewing court does not sit as a thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence."). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Garcia*, 667 S.W.3d at 761 (quoting *Jackson*, 443 U.S. at 319). Therefore, if the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Garcia*, 667 S.W.3d at 762.

We treat direct and circumstantial evidence equally under this standard. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee*, 676 S.W.3d at 915. Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Rather, we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

When a case involves an extrajudicial confession, we assess the sufficiency of the corroborating evidence under the common law corpus delicti rule. *Miranda v. State*, 620 S.W.3d 923, 928–29 (Tex. Crim. App. 2021) (citing *Fisher v. State*, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993)). Under this rule, we consider all of the admitted evidence except the extrajudicial confession, and we view that evidence in the light most favorable to the verdict. *Id.* We may, however, use the extrajudicial confession to help analyze the other available evidence with respect to the corpus delicti rule. *Shumway v. State*, 663 S.W.3d 69, 77 (Tex. Crim. App. 2022), *cert. denied*, 143 S. Ct. 214 (2022).

Finally, we measure the sufficiency of the evidence by the elements of the charged offense as defined by the hypothetically correct charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In this regard, to determine whether

the State has met its burden to prove a defendant's guilt beyond a reasonable doubt under the *Jackson* standard, we compare the elements of the offense to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik*, 953 S.W.2d at 240). The hypothetically correct charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

A. *The Corpus Delicti Rule*

To determine whether the extrajudicial statements that Appellant voluntarily made to the DPS agents during his recorded interview may be considered in our sufficiency analysis, we first address Appellant's contention that his recorded interview must be independently corroborated under the corpus delicti rule. For many decades, the corpus delicti rule has been applied to ensure that an accused is not convicted of an offense based solely on his false or coerced confession to a crime—which is not present here—that never occurred. *Shumway*, 663 S.W.3d at 75. Under the corpus delicti rule, "[w]hen a conviction is based on a defendant's extrajudicial confession, that confession does not constitute legally sufficient evidence of guilt without corroborating evidence independent of that confession showing that the essential nature of the offense was committed." *Id.* However, it is not necessary that the corroborating evidence independently prove that the charged offense was committed; rather, it need only make it more probable than not that, without the evidence, the offense did occur. *Id.*

While the corpus delicti rule requires that evidence of the essential nature of the offense be presented, the rule does not require confirmation of every element of the offense as alleged in the indictment for which the State has the burden of proof. *Bollinger v. State*, 224 S.W.3d 768, 778 (Tex. App.—Eastland 2007, pet. ref'd). For

example, the rule does not require proof that the defendant was responsible for the crime or confirmation of the specific details of the defendant's confession. *See Shumway*, 663 S.W.3d at 75; *Bollinger*, 224 S.W.3d at 778 (citing *Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002)). Rather, the rule only requires proof that the crime itself occurred. *Shumway*, 663 S.W.3d at 75.

The Court of Criminal Appeals in *Shumway* recently addressed the applicability of the corpus delicti rule in the context of sexual offenses perpetrated against children. *Shumway* involved a prosecution for indecency with a child by contact where the child victim was a preverbal seventeen-month-old child. *Shumway*, 663 S.W.3d at 71. At issue in *Shumway* were the appellant's extrajudicial admissions to his wife and pastor that, while he was babysitting a seventeen-month-old child, he moved the child's diaper, and touched her genital area with his hands, mouth, and penis. *Id.* The court expressed concern in adopting a strict application of the corpus delicti rule in situations that involved "the most vulnerable victims, such as infants, young children, and the mentally infirm," because, in such situations, the rule would effectively exclude reliable confessions and foreclose "convictions for real crimes that resulted in no verifiable injury." *Id.* at 76–79 (quoting *Miller v. State*, 457 S.W.3d 919, 927 (Tex. Crim. App. 2015)). Further, the court "recognized [its] ability to craft an exception to the rule when public policy considerations outweigh concerns about undermining the efficacy of the rule itself." *Id.* at 76 ("In such a case, if the record reflects that the confession itself is sufficiently corroborated, then reviewing courts will not be required to overturn a conviction that is otherwise based upon legally sufficient evidence due to a failure to satisfy the *corpus delicti* rule.").

To begin its analysis, the court assessed whether the evidence presented at trial by the State satisfied the corpus delicti rule. *Id.* at 77–78. The court held that it did not because, while the State presented evidence to establish the appellant's

guilty conscience and his opportunity to commit the offense, the State failed to present "*independent evidence* supportive of the sexual touching itself." *Id.* at 78–79 (emphasis added). Having found that the rule was not satisfied based on the evidence in the record, the court then evaluated the applicability of an exception to the corpus delicti rule to the facts at hand. *Id.* at 80 (citing *Miller*, 457 S.W.3d at 926–29) (discussing the "closely-related-crimes exception" to the rule).

In its analysis, the court considered three factors in determining whether the facts before it warranted the creation of an exception to the corpus delicti rule: (1) whether the child was "the kind of uniquely vulnerable victim that justified the exception" recognized by the court in *Miller*; (2) whether the record showed why the offense as committed "could not be reasonably expected to result in independent evidence [thereof] such as perceptible harm"; and (3) balancing "the need to protect society's most innocent victims from an actual crime only provable by a defendant's confession against the need to protect those who might confess to a crime that never occurred." *Id.* at 81–82 (citing *Miller*, 457 S.W.3d at 927).

Applying these three factors, the court concluded that it was appropriate to recognize an additional exception to the corpus delicti rule for cases where a defendant provides a well-corroborated confession to a sexual offense committed against a child who is incapable of making an outcry and where the offense did not result in perceptible harm. *Id.* at 79–83. The court held that "in such a case, if the record reflects sufficient corroborating facts and circumstances of the confession itself, then reviewing courts should uphold the conviction so long as there is legally sufficient evidence under the standard set out in *Jackson v. Virginia*." *Id.* at 83. Thus, after reviewing the record and considering the circumstances before it, the court held that sufficient evidence existed to support the appellant's conviction for indecency with a child by contact—and that the corpus delicti rule did not apply—because (1) the victim of the offense was a child incapable of making an outcry,

12

(2) the appellant committed a sexual offense against the child which would not result in any perceptible harm, and (3) the evidence presented by the State corroborated key facts of the appellant's confessions and his behavior after the incident occurred. *Id.*

As relevant to this appeal, a person commits the first-degree felony offense of aggravated sexual assault of a child if he intentionally or knowingly "causes the penetration of the mouth of a child by the sexual organ of the actor," and the victim is younger than fourteen. PENAL § 22.021(a)(1)(B)(ii), (a)(2)(B). If the victim of the offense "is younger than six years of age at the time the offense is committed," then the "minimum term of imprisonment for an offense under this section is increased to [twenty-five] years." *Id.* § 22.021(f)(1). The corpus delicti of aggravated sexual assault of a child is satisfied by evidence that a person had sexual contact with the child's mouth, and that the act was performed with criminal intent. *See Shumway*, 663 S.W.3d at 78 (citing *Salazar*, 86 S.W.3d at 644–45).

In response to Appellant's contentions, the State argues that: (1) independent evidence was presented to corroborate Appellant's voluntary statements, which made his statements more probable, thus satisfying the corpus delicti rule; and (2) the evidence satisfies the "closely-related-crimes exception" to the rule. While the State is correct that the evidence adduced at trial corroborates some of Appellant's voluntary, extrajudicial statements, here, as in *Shumway*, the State only presented evidence that Appellant, as he voluntarily confessed, had access to I.R. around the time that the offense occurred. Further, the State failed to present *independent evidence* to show the "essential nature" of the offense—that someone made sexual contact with the mouth of I.R. Thus, because there was no outcry made by I.R. or other *independent evidence* presented to show that Appellant had sexual contact with I.R.'s mouth approximately six years before he was indicted, the State failed to establish the "essential nature" of the offense with *independent evidence* to

13

satisfy the corpus delicti rule. *See id.*; *Miranda*, 620 S.W.3d at 928; *Bollinger*, 224 S.W.3d at 778.

The "closely-related-crimes exception" to the corpus delicti rule applies when a defendant has confessed to multiple offenses *and* at least one offense establishes independent evidence of the criminal conduct. *See Miller*, 457 S.W.3d at 926–29 (applying the closely-related-crimes exception to multiple sexual offenses where the appellant admitted that he molested his daughter on three different occasions and the police had only found independent evidence to corroborate one of the incidents); *see also Miranda*, 620 S.W.3d at 929 (applying the closely-related-crimes exception to multiple sexual offenses where the appellant made extrajudicial statements that he had sexual intercourse with a minor student and independent corroborating evidence existed to show that he also had improper sexual relations with other students); *Adams v. State*, No. 07-22-00200-CR, 2023 WL 4056063, at *5 (Tex. App.— Amarillo June 16, 2023, no pet.) (mem. op., not designated for publication) (applying the closely-related-crimes exception to the appellant's extrajudicial statements concerning a prosecution for murder and tampering with physical evidence—the disposal of a murder victim's body—where there was evidence to show the corpus delicti of the victim's murder). In applying the "closely-related-crimes" exception, courts look to the "closeness" of the offenses, namely: (1) the temporal proximity of the offenses; (2) the type of offenses committed; (3) similarities in how the offenses were committed; (4) whether the offenses arose from a single criminal episode or a course of conduct; (5) whether the corpus delicti of other offenses have been shown; and (6) any other considerations that would logically inform the inquiry. *Miranda*, 620 S.W.3d at 930.

Here, while Appellant made multiple, voluntary admissions to the DPS agents that he committed the offenses for which he was charged, the evidence that proves his possession of child pornography does not constitute independent evidence that

he sexually assaulted I.R.—that he made sexual contact with the mouth of I.R.—nor does the evidence show a similarity in how these offenses were committed. Rather, the evidence only shows that the offenses occurred concurrently (that Appellant had viewed child pornography since approximately 2012, both before and after he sexually assaulted I.R.) and that Appellant was sexually attracted to children who were the same age as I.R. at the time he committed these offenses. Therefore, under these circumstances, the evidence does not support an extension of the "closely-related-crimes" exception. *Id.* However, and despite the above, because the facts, circumstances, and the evidence that supports Appellant's conviction of aggravated sexual assault of a child are similar to those in *Shumway*, we conclude that the *Shumway* exception to the corpus delicti rule applies.

In this case, Appellant voluntarily confessed to sexually assaulting five-year-old I.R. in a hallway of the trailer, where the two would often play video games together. Around six years later, when I.R. was eleven, I.R. underwent a CAC interview where he did not make an outcry concerning any sexual abuse. The State presented Schoen, who explained why a child such as I.R. may not make an outcry concerning sexual abuse. Schoen also testified that it is common for children to not realize that they had been sexually abused until after they attended sex education classes at school, and for a child victim to then later exhibit behavioral changes.

We note that I.R. never denied that the sexual abuse occurred; rather, when I.R. was asked about being sexually abused by Appellant, he would avoid discussing the topic entirely by either changing the subject of the conversation or leaving the room. I.R.'s mother also testified that I.R. was not an emotional child and would often "shut down" and internalized his feelings. His mother noticed that around six months before Appellant was arrested, I.R. began exhibiting changes in his demeanor after he attended sex education classes at school. These behavioral changes included I.R. distancing himself from Appellant as well as I.R. "crying"

because he did not want to visit Appellant's home after I.R.'s mother "forced" him to do so.

Further, during his interview with the DPS agents, Appellant stated that he preyed on I.R. because I.R. was less likely than his older brother to "tell" on Appellant, and that he instructed I.R. to not tell anyone about the sexual abuse. Appellant also stated that he only sexually abused I.R. once because he did not want to be caught or have I.R. "tell" on him. In light of these circumstances, we conclude that I.R. was unable or unwilling to articulate the trauma that he suffered as a result of Appellant's sexual abuse or the details of Appellant's conduct, and that he is "the kind of uniquely vulnerable victim" that justifies applying the exception recognized by the Court of Criminal Appeals in *Shumway* and *Miller*. *See Shumway*, 663 S.W.3d at 81; *Miller*, 457 S.W.3d at 927.

Additionally, there is evidence in the record to explain why the charged offense could not reasonably be expected to result in independent evidence of aggravated sexual assault of a child, or why this offense would not result in perceptible harm to I.R. *Shumway*, 663 S.W.3d at 82. Appellant voluntarily confessed that the aggravated sexual assault occurred when I.R. was five— approximately six years before I.R.'s CAC interview. Based on the evidence in the record, and the absence of any evidence to the contrary, the only witnesses to this offense were Appellant and I.R. As Schoen testified, it is common for children to be unaware that they are being groomed or sexually abused by someone with whom they have or had an important relationship until they have been educated about these particulars at school. In his confession, Appellant stated that he taught I.R. to perform oral sex, and that I.R. performed oral sex on Appellant for approximately one minute in the hallway of his trailer. Further, Appellant told DPS agents that he avoided sexually abusing I.R. again because he did not want to get caught. Thus, under these circumstances, and based on the passage of time, it was unlikely, if not

16

impossible, that any physical evidence of Appellant's crime would be found approximately six years later when Appellant voluntarily confessed to the offense.

Moreover, Appellant's voluntary confession to having committed aggravated sexual assault against I.R. as charged was well-corroborated. Appellant admitted to the DPS agents that it occurred around "five or six years" before his interview with them, which took place in 2022. I.R.'s mother stated that I.R. played video games with Appellant in the trailer over a two- or three-year period, including in 2015, when I.R. was five. I.R.'s mother testified that Appellant had access to I.R. while his grandmother was watching him during this time, and she was aware that I.R. was alone with Appellant in the trailer. I.R.'s mother testified that I.R.'s behavior changed after he attended sex education classes at school when I.R. was eleven— six months before Appellant was arrested for and confessed to possessing child pornography and sexually assaulting I.R.—and that I.R. no longer wanted to see Appellant and would "cry" when she forced him to go to Appellant's house. Schoen also testified about the reasons for the behavioral changes that I.R.'s mother observed.

In addition to the reasons expressed above, and because Appellant's voluntary confession to his aggravated sexual assault of I.R. was well-corroborated, we conclude that the *Shumway* exception to the corpus delicti rule applies to this case. *Id.* at 79–83. Thus, we may consider Appellant's voluntary, extrajudicial statements in assessing the sufficiency of the evidence to support his conviction of aggravated sexual assault of a child. In this regard, we have reviewed the evidence in the light most favorable to the jury's verdict, and we conclude that the record before us contains sufficient evidence from which the jury could have found beyond a reasonable doubt that Appellant committed the offense of aggravated sexual assault of a child as charged in the reindictment. *See* PENAL § 22.021(a)(1)(B), (a)(2)(B);

17

*Jackson*, 443 U.S. at 319. Accordingly, we overrule Appellant's second issue on appeal.

### III. *Consolidation and Severance*

Appellant contends in his first issue that: (1) the twenty-five counts of possession of child pornography are not part of the same criminal episode or course of conduct as the aggravated sexual assault of I.R. and, therefore, the trial court abused its discretion when it granted the State's motion for consolidation and joined all offenses into a single trial without conducting a hearing on the motion; and (2) the trial court erred when it failed to sever Counts One through Twenty-Five from Count Twenty-Six after Appellant entered a plea of guilty to each count of possession of child pornography "to ensure a unitary trial on Counts [One through Twenty-Five] and a bifurcated trial on Count [Twenty-Six]." In response, the State argues that Appellant failed to preserve this issue for our review because Appellant "neither objected to the consolidation nor filed a motion to sever before trial began."

To preserve a complaint for appellate review, a party must present a specific, timely objection to the trial court that articulates the specific grounds for the ruling that the complaining party sought from the trial court. TEX. R. APP. P. 33.1(a)(1)(A); *Burg v. State*, 592 S.W.3d 444, 448–49 (Tex. Crim. App. 2020); *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009) (citing *Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993) (Campbell, J., concurring)). In other words, the rules of preservation require that the complaint raised on appeal must first have been presented to and addressed by the trial court. This procedure "provide[s] the trial [court] and opposing counsel an opportunity to address and, if necessary, correct the purported error." *Ford*, 305 S.W.3d at 533 (citing *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005)). As such, the arguments raised on appeal must comport with the objections made to the trial court or they are waived. TEX. R.

18

APP. P. 33.1(a)(1)(A); *Dominguez v. State*, 474 S.W.3d 688, 699 (Tex. App.—Eastland 2013, no pet.).

Generally, the State is permitted to consolidate multiple pending prosecutions against a defendant into a single trial when all charged offenses arise out of the same criminal episode. PENAL § 3.02(a) (West 2021) (stating that "[a] defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode"). For the purposes of consolidation or joinder of offenses under Section 3.02, a "criminal episode" is defined as the commission of two or more offenses that are (1) committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan or (2) the offenses are the repeated commission of the same or similar offenses. *Id.* § 3.01; *see Rojo v. State*, No. 11-17-00225-CR, 2019 WL 3731382, at *3 (Tex. App.—Eastland Aug. 8, 2019, pet. ref'd) (mem. op., not designated for publication). It is unnecessary that the offenses that create a criminal episode occur on a single date, at a single place, or against a single complainant. *Diaz v. State*, 125 S.W.3d 739, 742 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Rather, a criminal episode may comprise offenses against different complainants and may even occur over a period of years. *Id.* Further, the consolidation of a defendant's pending cases can occur by either the express consent of a defendant or by the implied consent of a defendant through his failure to object to a consolidation request. *See Milligan v. State*, 764 S.W.2d 802, 803 (Tex. Crim. App. 1989).

Once two or more offenses have been consolidated for trial in a single criminal action under Section 3.02, a defendant has a right to sever the consolidated offenses; however, this right is not absolute. PENAL § 3.04 (West Supp. 2023); *Werner v. State*, 412 S.W.3d 542, 546 (Tex. Crim. App. 2013); *see Perez v. State*, No. 11-17-00206-CR, 2019 WL 3227575, at *1 (Tex. App.—Eastland July 18, 2019, no pet.) (mem. op., not designated for publication). A defendant's right to a severance is

limited by Section 3.04(c), which provides that the right does not apply to a prosecution for sexually based offenses as described by Section 3.03(b).  PENAL § 3.04(c).  However, and if requested, a severance of sexually based offenses may be granted if the trial court "determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses, in which event the [trial court] may order the offenses to be tried separately or may order other relief as justice requires." *Id.* § 3.04(c); *Werner*, 412 S.W.3d at 547 n.18; *see Darling v. State*, 262 S.W.3d 913, 915 (Tex. App.—Texarkana 2008, pet. ref'd).

Because a defendant has an interest in limiting the presentation and the jury's consideration of evidence about separate offenses, a defendant's motion to sever must be filed and presented to the trial court for determination before trial commences and the jury is informed about the multiple offenses.  *Thornton v. State*, 986 S.W.2d 615, 616–18 (Tex. Crim. App. 1999) (holding that the appellant's motion for severance was untimely because it was not made before trial began; the appellant requested a severance after the jury was impaneled and sworn).  Thus, if a defendant fails to move for severance before his trial begins, then any subsequent objection or complaint is untimely, and the complaint is not properly preserved for appellate review.  TEX. R. APP. P. 33.1(a)(1)(A); *see Thornton*, 986 S.W.2d at 617–18.

Here, the record shows that the State filed its motion for consolidation more than thirty days before Appellant's scheduled trial date, providing notice to Appellant and the trial court of its request that the two pending cases be tried in a single criminal proceeding.  *See* PENAL § 3.02(b) ("When a single criminal action is based on more than one charging instrument within the jurisdiction of the trial court, the state shall file written notice of the action not less than 30 days prior to the trial.").  After receiving notice of the State's motion, Appellant did not object to the motion or to the trial court's order granting it.  As such, Appellant impliedly consented to

the consolidation of his two cases. *See Milligan*, 764 S.W.2d at 803; *see also Walker v. State*, No. 02-20-00045-CR, 2021 WL 1919645, at *1 (Tex. App.—Fort Worth May 13, 2021, no pet.) (mem. op., not designated for publication). Further, because he failed to timely object to the trial court's consolidation of these offenses—or otherwise preserve this issue in the record—Appellant has waived this part of his first issue as it pertains to the propriety of the trial court's order granting the State's motion for consolidation. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also Milligan*, 764 S.W.2d at 803.

Moreover, Appellant waived his severance complaint. All of Appellant's charged offenses are listed and described in Section 3.03(b). *See* PENAL §§ 3.03(b), 3.04(b). Because Appellant was charged with possession of child pornography and aggravated sexual assault of a child, Appellant could not compel a mandatory severance of these offenses. *See id*. §§ 3.03(b)(2)(A), 3.03(b)(3)(A), 3.04(c).[2] Thus, Appellant could only obtain a severance if (1) he timely requested a severance prior to the commencement of his trial, and (2) the trial court determined that either Appellant or the State would be unfairly prejudiced by the consolidation of these offenses. *See id.* § 3.04(c); *see Thornton*, 986 S.W.2d at 617–18; *Hulsey v. State*, 211 S.W.3d 853, 858 (Tex. App.—Waco 2006, no pet.) ("[T]he right to severance does not apply to a prosecution for indecency with a child or sexual assault of a child unless the trial court determines that the defendant would be unfairly prejudiced by a joinder of the offenses.").

In this instance, Appellant did not file a motion to sever his charges for possession of child pornography from the charge for aggravated sexual assault of a

[2]In his brief, Appellant cites to Section 3.03(b)(5) and argues that this section "includes offenses under section 43.05 (Counts 1-25)." We note that Counts One through Twenty-Five of the reindictment charge Appellant with possession of child pornography under Section 43.26 of the Penal Code. *See* PENAL § 43.26. Section 43.05 of the Penal Code criminalizes compelling prostitution, an offense with which Appellant was not charged. *See* PENAL §§ 43.05.

child prior to the commencement of trial, nor did he argue in the trial court below that the joinder of these offenses would prejudice him. As such, because Appellant did not raise this issue before the trial court, Appellant failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A). Consequently, we need not address Appellant's arguments that the trial court erred when it failed to sever Appellant's offenses or that he was prejudiced by their consolidation. *See id.*; *see Thornton*, 986 S.W.2d at 617–18; *Watson v. State*, 900 S.W.2d 60, 63 (Tex. Crim. App. 1995) (holding that the appellant waived the argument on the joinder of offenses on appeal because he failed to file a motion to sever with the trial court pursuant to Section 481.132 of the Texas Health and Safety Code).

Accordingly, we overrule Appellant's first issue on appeal.

## IV. *This Court's Ruling*

We affirm the judgments and order of the trial court.


W. STACY TROTTER

JUSTICE


September 19, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.